UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Jesus LIRA–BARRAZA,
Defendant–Appellant.

No. 88–5161.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted En
Banc Feb. 21, 1991.

Decided July 22, 1991.

Judy Clarke, Federal Defender of San Diego, San Diego, Cal., for defendant-appellant.

Bruce R. Castetter, Asst. U.S. Atty., and Carol C. Lam, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before WALLACE, Chief Judge, BROWNING, HUG, TANG, FLETCHER, PREGERSON, D.W. NELSON, REINHARDT, HALL, THOMPSON, and O'SCANNLAIN, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Jose Jesus Lira–Barraza appeals a sentence of 36 months and a special assessment of $50 imposed under the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3351, et seq. (1988) ("the Act"), on his plea of guilty to illegal transportation of aliens in viola-

tion of 8 U.S.C. § 1324.[1] The district court departed from the 0 to 6 months range recommended by the United States Sentencing Guidelines ["U.S.S.G." or "Guidelines"] because Lira–Barraza, in an attempt to evade apprehension, drove his car carrying a number of undocumented aliens at high speeds and in a dangerous manner. A panel of this court affirmed the sentence, except the special assessment, relying on *United States v. Ramirez–DeRosas,* 873 F.2d 1177, 1179 (9th Cir.1989), which upheld a departure to 30 months from a Guideline range of 0 to 4 months based upon a similar high-speed chase. *See United States v. Lira–Barraza,* 897 F.2d 981, 987–88 (9th Cir.1990). We granted rehearing en banc. *United States v. Lira–Barraza,* 909 F.2d 1370 (9th Cir.1990).

18 U.S.C. § 3553(b) requires a court to sentence a defendant within the applicable Guideline range unless "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." The panel set forth a five-step process for reviewing sentences outside the applicable Guideline range.[2] These five steps may be combined into three.

The first is to determine whether the district court had legal authority to depart. By the terms of 18 U.S.C. § 3553(b), the district court may not depart from the applicable Guideline range unless it identifies an aggravating circumstance of a kind or

to a degree the Commission did not adequately take into account when formulating the Guidelines. If the circumstance is one not adequately considered, the court is legally authorized to depart so long as the circumstance is consistent with the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(a), with the Guidelines, and, of course, with the Constitution.

As the panel explained, whether the Commission adequately took the circumstance into account is a question of law, subject to plenary review. *Lira–Barraza,* 897 F.2d at 985. Whether consideration of the circumstance is inconsistent with section 3553(a) and the Guidelines is also a question of law reviewed de novo since it involves determining the statute's meaning and the Commission's intent. If the district court has authority to depart, the court's decision to depart or not (as distinguished from the extent of departure if the court decides to depart) is left to the court's discretion.

In this case, the district court identified Lira–Barraza's participation in a high-speed chase as the aggravating circumstance. The Commission's express statement in Application Note 8 of U.S.S.G. § 2L1.1, that the Commission did not consider the existence of this circumstance in formulating the Guidelines and that departure should be considered, established beyond argument that departure was legally authorized.

Second, we review for clear error factual findings supporting the existence of the identified circumstance. 18 U.S.C.

---

**1.** This case is not moot. Lira–Barraza is presently serving a two-year term of supervised release. This appeal may have a direct effect on this portion of his sentence. Supervised release is not mandatory for a violation of section 1324(a). The district court imposed the term of supervised release in this case because the Guidelines require such a condition when a sentence of imprisonment exceeding one year is imposed. *See* U.S.S.G. §§ 5D1.1 and 5D1.2(b)(2). Contrary to the government's contention, if, as a result of this appeal, Lira–Barraza were resentenced to a term of imprisonment of less than one year, imposition of supervised release will be discretionary. Since our decision may affect Lira–Barraza's sentence, we need not consider whether collateral conse-

quences alone are sufficient to create a live controversy.

**2.** The test as stated by the panel is as follows:
    (1) whether the district judge adequately identified the "aggravating or mitigating circumstance" ...;
    (2) whether the identified circumstance actually existed;
    (3) whether the circumstance was adequately taken into consideration by the Sentencing Commission;
    (4) if not, whether the circumstance should result in departure; and,
    (5) whether the extent or degree of departure was unreasonable.
*Lira–Barraza,* 897 F.2d at 983.

§ 3742(d). Since Lira–Barraza did not dispute the existence of the circumstances relied on by the district court as the basis for departure, the court's finding that these facts existed obviously met the clearly erroneous standard. *See Lira–Barraza,* 897 F.2d at 987.

Third, we must determine whether the extent of departure from the applicable Guideline range was "unreasonable" within the meaning of 18 U.S.C. § 3742(e)(3) and (f)(2), which define the standard of appellate review. This is the issue presented for decision by *Lira–Barraza.*[3]

▪ Lira–Barraza argues that to realize Congress' purpose of reducing unwarranted disparity in sentencing the courts should consider the sentencing scheme established by the Act and the Guidelines in determining whether the extent of a departure is "reasonable;" that there is nothing in the district court's sentencing statement indicating the court did so;[4] and that the sentence imposed is inconsistent with such an approach. Lira–Barraza points out that his 36–month sentence is six times greater than the maximum provided by the applicable Guideline range,[5] and falls within the range provided for what he regards as significantly more serious offenses.[6] Lira–

Barraza also points out that although the departure was equivalent to a 13 to 14 level increase in the base offense level, the Commission in a subsequent amendment to the applicable Guideline provided that the circumstances the court relied upon for departure justified an increase of only two levels.[7]

The government responds that the extent of departure is within the discretion of the district court and need not be justified by reference to other provisions of the Guidelines. The government contends the purpose of the Guidelines is to prevent disparity in "typical" or "heartland" cases, *see* United States Sentencing Commission, Guidelines Manual, Ch. 1, Pt. A, intro. comment. (4(b)) (1990) [hereinafter "Guidelines Manual"], and not in the "atypical" cases in which departure is permitted. Unguided departures, the government argues, are essential to the evolutionary process through which the Commission learns from the experience of sentencing judges reflected in departure sentences and adjusts the Guidelines accordingly. *See Lira–Barraza,* 897 F.2d at 985.

The government relies upon a line of cases[8] that emphasizes the discretion vested in the district court to determine the

**3.** Lira–Barraza also challenged his sentence as violative of the Due Process and Cruel and Unusual Punishment clauses. We do not reach these constitutional issues.

**4.** Although the district court stated its reasons for departing from the Guideline range as required by 18 U.S.C. § 3553(c), the court's statement contains no explanation of the extent of the court's departure from the Guideline range. *See Lira–Barraza,* 897 F.2d at 986–87 n. 12.

**5.** Under the 1987 version of the Guidelines with amendments effective January 15, 1988, Lira–Barraza's base offense level under U.S.S.G. § 2L1.1 was 6. Because no adjustments were applicable and Lira–Barraza had a criminal history category of I, the recommended sentencing range was 0 to 6 months. Lira–Barraza's 36–month sentence falls within the range applicable to a defendant with a criminal history category of I and a base offense level of 19.

**6.** Lira–Barraza lists the following example in his brief based upon the 1987 version of the Guidelines: (1) assault with intent to commit murder; conspiracy or solicitation to commit murder; attempted murder: base offense level of 20

(§ 2A2.1); (2) aggravated assault resulting in serious bodily injury: base level 15 plus 4 (§ 2A2.2(b)(3)); (3) burglary of a residence while armed: base level of 17 plus 2 (§ 2B2.1(b)(4)); (4) robbery resulting in serious bodily injury: base level 18 plus 2 (§ 2B3.1(b)(3)(A)); (5) extortion by force of threat resulting in bodily injury: base level 18 plus 2 (§ 2B3.2(b)(3)(A)); (6) coercive transportation of a minor for purposes of prostitution: base level 16 plus 4 (§ 2G1.2); (7) arson, where the defendant recklessly endangered the safety of others: base level 6 plus 14 (§ 2K1.4(b)(2)).

**7.** *See* U.S.S.G. § 3C1.2 (1990) ("If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.").

**8.** *See United States v. Lang,* 898 F.2d 1378, 1380 (8th Cir.1990); *United States v. Burns,* 893 F.2d 1343, 1347 (D.C.Cir.1990); *United States v. Joan,* 883 F.2d 491, 496 (6th Cir.1989); *United States v. Diaz–Villafane,* 874 F.2d 43, 51–52 (1st Cir. 1989); *United States v. Roberson,* 872 F.2d 597, 607 (5th Cir.1989).

degree of departure, and rejects any approach requiring the district court to add mechanically sentence ranges drawn from potentially analogous provisions in the Guidelines. We agree that determining the degree of departure is inevitably and properly a discretionary judgment. It does not follow, however, that the judge's discretion is not limited by the judgments of the Congress and the Commission reflected in the Act and in the Guidelines. There are many reasons for concluding departure sentences should be consciously measured against these standards.

Congress regarded "unwarranted sentencing disparity" as "a major flaw in the existing criminal justice system," S.Rep. No. 225, 98th Cong., 1st Sess. 65, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3248, attributable to "the lack of any statutory guidance or review procedures to which courts and parole boards might look." *Id.* at 38, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3221 (footnote omitted).[9] The solution to the problem was to abolish the parole system entirely and provide "a comprehensive statement of the Federal law of sentencing" for the guidance of the courts. *Id.* at 50, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3233. The Act "creates a sentencing guidelines system that is intended to treat *all* classes of offenses committed by *all* categories of offenders consistently." *Id.* at 51, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3234 (emphasis added; footnote omitted); *see also id.* at 52, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3235. Specifically, "the judge is directed to impose [a] sentence after a comprehensive examination of the characteristics of the particular offense and the particular offender.... This will assure that the probation officer

and the sentencing judge will be able to make informed comparisons between the case at hand and others of a similar nature." *Id.* at 53, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3236; *see also id.* at 52, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3235.

Congress' perception of the problem, the cause, and the solution supports Lira–Barraza's interpretation of the statute and undercuts that proposed by the government. The problem was disparity. Its cause was unlimited judicial discretion. The remedy was a single statutory sentencing structure guiding the discretion of the court in all cases to the end that similar sentences would be imposed on similar offenders for similar offenses.

Recognition of sentencing discretion to be exercised in departure cases alone without regard to the sentencing system established by the Act would be inconsistent with the statute's purpose and structure. It would create an exception in a Federal sentencing system Congress intended to be comprehensive, risking return in this category of cases to the unwarranted sentencing disparity Congress sought to eliminate. *See United States v. Kikumura,* 918 F.2d 1084, 1110–111 (3d Cir.1990); *United States v. Pearson,* 911 F.2d 186, 190 (9th Cir.1990); *United States v. Ferra,* 900 F.2d 1057, 1062 (7th Cir.1990).

There is nothing in the structure of the statute or the nature of this group of cases to justify such an exception. Departure is allowed in these cases because they involve an aggravating or mitigating circumstance the Commission did not identify in formulating the applicable Guidelines. The omission of a particular circumstance was not based on any notion that the nature of the omitted circumstance required an exercise of sentencing discretion unrelated to the

---

**9.** *See also* S.Rep. No. 225, 98th Cong., 1st Sess. 41, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3224 (footnote omitted) ("The absence of a comprehensive Federal sentencing law and of statutory guidance on how to select the appropriate sentencing option creates inevitable disparity in the sentences which courts impose on similarly situated defendants."); *id.* at 49, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3232 ("The lack of reasonable con-

sistency in the sentences handed down by the courts is due in large part to the lack of a comprehensive Federal sentencing law. Federal statutes should provide clear guidance to Federal judges on how to select from among the available alternatives an appropriate sentence to impose upon the particular defendants before them. This disparity is fair neither to the offenders nor to the public.").

Guideline structure. Rather, certain offense characteristics were referred to in the Guidelines because they were typically associated with the particular offense; other circumstances were omitted because they were not typically associated with the offense and it was simply impossible to list all potentially relevant conduct.[10] In short, there is no difference between offense characteristics referred to in the Guidelines and those that are not that would justify applying the statutory sentencing system of imposing similar sentences for similar conduct by similar offenders as to one but not the other.[11]

Other provisions of the statute and Guidelines support the conclusion that departure sentences are limited by the sentencing structure established by the Act. The Act provides that the courts shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This statutory directive applies to all sentences, including those departing from the Guideline range applicable to a particular offense, and requires, at a minimum, that departure sentences be consistent with other sentences fixed by the Guidelines or suggested by Commission standards and policies.

The statute further requires that in determining the sentence to be imposed for an offense for which there is no applicable Guideline, the courts must "hav[e] due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy state-

ments of the Sentencing Commission." 18 U.S.C. § 3553(b). Similarly, the Commission has directed if "no guideline expressly has been promulgated, apply the most analogous offense guideline." U.S.S.G. § 2X5.1. There is no apparent reason why the courts should be required to link to the sentencing structure of the Act a sentence imposed for an offense for which there is no Guideline at all, but would be free to disregard the sentencing structure when there is a Guideline specifically applicable to the offense but an atypical aggravating circumstance is present. As the Seventh Circuit said in *United States v. Ferra,*

> In departing the judge should compare the seriousness of the aggravating factors at hand with those the Commission considered. Congress prescribed the method of analogy for crimes without guidelines, 18 U.S.C. § 3553(b), and it is equally appropriate for crimes with guidelines but without sufficient detail in the lists of aggravating and mitigating circumstances.

*Ferra,* 900 F.2d at 1062; *see also Kikumura,* 918 F.2d at 1112.

The Act directs the court of appeals upon review of the record to determine if a sentence outside the applicable guideline range is "unreasonable," 18 U.S.C. § 3742(e)(3), having regard for the provisions of section 3553(a), which, as noted earlier, require the district court, *inter alia,* to avoid unwarranted disparities among defendants with similar records who are guilty of similar conduct. The reasonableness of sentences determined without reference to identified standards would not be susceptible to rational review.[12] A sentence imposed under

---

**10.** *See Guidelines Manual,* Ch. 1, Pt. A, intro comment (4(b)); U.S.S.G. § 5K2.0; *United States v. Jackson,* 921 F.2d 985, 988 (10th Cir. 1990); *Ferra,* 900 F.2d at 1062.

**11.** We reject the government's suggestion that limitless discretion is appropriate in departure cases because, "pursuant to § 1B1.4 of the Guidelines, a sentencing court may consider a greater range of information when choosing a departure sentence than was considered when the Sentencing Commission calculated the Guideline ranges." U.S.S.G. § 1B1.4 permits the court to consider an unlimited range of infor-

mation "[i]n determining the sentence to impose within the guideline range." The potential sentencing range is greater in departure cases, of course; that is the very purpose of allowing departure. But the information the court can consider in determining the specific sentence is no different, and U.S.S.G. § 1B1.4 says nothing as to whether departure sentences should be linked to the structure, provisions, and policies of the Act and Guidelines.

**12.** *Cf. United States v. Perez–Magana,* 929 F.2d 518, 521–22 (9th Cir.1991) (requiring specific statement of reasons for degree of departure in order to effectuate meaningful appellate re-

a standard requiring consistency with sentences imposed on other defendants with similar records who are guilty of similar conduct is readily reviewed in light of the standards and policies of the Act itself.

The Guidelines provide that in determining the sentence to be imposed when a departure is based upon the inadequacy of a defendant's criminal history category, the court must "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." U.S.S.G. § 4A1.3. As the Seventh Circuit has said, "[a]lthough the Commission did not discuss whether the same approach should be used for departures based on the seriousness of the crime, it makes sense to do so." *Ferra*, 900 F.2d at 1062; *see also Kikumura*, 918 F.2d at 1111. As Lira–Barraza points out, allowing a court unlimited discretion in sentencing when departing on the basis of an atypical circumstance not mentioned in the Guidelines could yield the anomalous result of a defendant with a serious criminal history receiving a lower sentence than a first time offender committing an offense in which departure was possible because of an atypical circumstance not mentioned in the Guidelines.

The government contends this anomaly was expressly anticipated by the Commission. The government relies upon a passage in the Guidelines Manual distinguishing "two different kinds of departures"—those in which departure by analogy or by a specific amount is recommended in the Guidelines, and all other departures, which, the Manual states, "will remain unguided." *See* Guideline Manual, Ch. 1, Pt. A, intro. comment (4(b)). The quoted phrase, the government argues, means that when a specific amount of departure or an appropriate analogy is not suggested the extent of the departure is to be determined without any reference to Guideline standards at all. We reject the government's implication. The Commission nowhere states that a district court's sentencing discretion is limitless when the extent of departure is not specifically guided. It is a more reasonable reading that the Commission intended only to recognize that departures were recommended in some circumstances, but courts could also depart in circumstances not specifically suggested.

We also reject the government's argument, referred to by the panel, *Lira–Barraza*, 897 F.2d at 985, that unrestrained sentencing discretion in departure cases is "crucial" to the "evolutionary process" through which the Commission is to improve the Guidelines on the basis of the experience of sentencing courts reflected in the sentences they impose and the reasons they give for imposing them. Clearly the Commission will gain more useful guidance from sentences arrived at through analysis of the relationship of the case at hand to the standards and policies already incorporated in the Guidelines, than from sentences that are simply ad hoc.

As we have said, determining the appropriate degree of departure is necessarily a discretionary judgment vested initially in the district court. The question is not the existence of discretion, however, but the standards that must govern the district court in its exercise. As Congress stated: "The sentencing guidelines system will not remove all of the judge's sentencing discretion. Instead, it will guide the judge in making his decision on the appropriate sentence." S.Rep. No. 225, 98th Cong., 1st Sess. 51, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3234.[13]

view); *United States v. Wells,* 878 F.2d 1232, 1233 (9th Cir.1989) (same).

**13.** Judge William W. Wilkins, Jr., Chairman of the Sentencing Commission, recently said:
The guidelines do not provide a perfect system, but compared with the system of the past they make substantial improvement and greatly increase uniformity and proportionality in sentencing. A judge's discretion is not abolished under the guidelines and should not be. However, the guidelines do structure the exercise of this discretion so that similar defendants who commit similar crimes are generally sentenced in a similar manner.
Interview with Judge William W. Wilkins, Jr.: Designing a Fair and Uniform Sentencing System, The Third Branch, Mar. 1991, at 10.
It is the function of the district court to rationalize the basis for the degree of departure. *Jackson,* 921 F.2d at 990 n. 2; *Kikumura,* 918 F.2d at 1113–14. The essential factor is that the

In requiring that departure sentences are to be determined in light of the structure, standards and policies of the Act and Guidelines, we adhere to our decision in *United States v. Pearson*, 911 F.2d at 190–91, and join the Second, Third, Fourth, Seventh, Tenth, and Eleventh Circuits. *See United States v. Kim*, 896 F.2d 678, 684–85 (2d Cir.1990); *Kikumura*, 918 F.2d at 1111–13; *United States v. Hummer*, 916 F.2d 186, 194 & n. 7 (4th Cir.1990); *Ferra*, 900 F.2d at 1062–63; *Jackson*, 921 F.2d 985, 990–91; *United States v. Shuman*, 902 F.2d 873, 876–77 (11th Cir.1990).

We review the degree of departure to determine whether it is "unreasonable." 18 U.S.C. § 3742(e)(3). The statute does not mean every possible sentence but one is "unreasonable"—a reasonableness standard assumes a range of permissible sentences. We give weight to the district court's choice within a permissible range. Reversal is required only if the choice is "unreasonable" in light of the standards and policies incorporated in the Act and the Guidelines.

As we noted at the outset, the district court's statement of reasons for departing from the 0 to 6 months Guidelines range to impose a sentence of three years contained no reasons for the length of the sentence. Such a statement for sentences outside the Guidelines "is especially important.... [It] will play an important role in the evaluation of the reasonableness of the sentence." S.Rep. No. 225, 98th Cong., 1st Sess. 80, *reprinted in* 1984 U.S.Code & Admin.News at 3263. To facilitate appellate review the district court's statement should include a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines.

The sentence is VACATED and the case REMANDED for further proceedings.[14]

WALLACE, Chief Judge, concurring in part and concurring in the judgment:

The scope of my disagreement with the majority is narrow. I agree with the majority's statement of the standard of review for evaluating Guidelines departures. I also conclude that Lira–Barraza's sentence should be vacated. However, I cannot join in the majority's discussion of the standards that must govern the district judge when determining the extent of a Guidelines departure. Therefore, I write separately.

I

As I read it, the majority opinion vacates the sentence and remands without considering whether the sentence imposed was unreasonable. Rather, the majority holds that the district judge's failure to provide an explanation of the extent of departure in terms of the structure of the Sentencing Guidelines constitutes per se grounds for reversal. I do not believe this result is supported by the Sentencing Reform Act (Act) or the Guidelines. Therefore, I conclude we should join the other circuits which have held that an explanation of the extent of departure in terms of analogous Guidelines provisions is recommended, but not required.

Analysis of our role in evaluating Guidelines departures should begin with 18 U.S.C. § 3742, which sets the standard for appellate review of sentences. Section 3742 provides that "[u]pon review of the record, the court of appeals shall determine whether the sentence ... is outside the applicable guideline range, and is unreasonable." 18 U.S.C. § 3742(e). Noticeably lacking from this provision is any authorization now mandated by the majority for appellate courts to reverse sentences on the grounds that the sentencing judge did

---

extent of departure be based upon objective criteria drawn from the Sentencing Reform Act and the Guidelines. Possible criteria include comparison of the seriousness of the atypical circumstance to offenses or enhancements in the Guidelines, *Ferra*, 900 F.2d at 1062; treatment of the circumstance as a separate offense covered by the Guidelines, *id.;* and considera-

tion of the structure of the sentencing table, in particular, the increments between guideline ranges, *Jackson*, 921 F.2d at 993.

**14.** We affirm the special assessment imposed upon Lira–Barraza. *See United States v. Munoz–Flores*, —— U.S. ——, 110 S.Ct. 1964, 1974, 109 L.Ed.2d 384 (1990).

not determine the departure with reference to the "structure, standards and policies of the Act and Guidelines." Nor is the judge's failure to draw these comparisons necessarily dispositive of the issue of whether the sentence is reasonable—it is the length of the sentence, not the level of detail of the sentencing judge's analysis, that should control our determination of reasonableness.

No other statutory provisions support the majority's requirement that district judges determine departure sentences by reference to the structure of the Guidelines. For example, 18 U.S.C. § 3553(a)(6), relied on by the majority, requires sentencing judges to be aware of "the need to avoid unwarranted sentence disparities among defendants ... who have *been found guilty* of similar conduct." (Emphasis added.) By its terms, this provision requires consistency when sentencing defendants who have been convicted of the same crime, and does not apply to departures on the basis of unconvicted conduct. However, even assuming it applies to Guidelines departures, it only states a factor to be considered in sentencing, and falls far short of requiring judges to explain departures by reference to analogous Guidelines provisions. *See id.*

As the majority points out, the Act explicitly requires sentencing judges to rely on an analysis of existing Guidelines when determining sentences for an offense for which there is no applicable Guideline. 18 U.S.C. § 3553(b). The majority jumps from this starting point to suggest that "[t]here is no apparent reason" why this requirement should not apply to Guidelines departures. But we have previously held that "[w]hen some statutory provisions expressly mention a requirement, the omission of that requirement from other statutory provisions implies that Congress intended ... the exclusion." *West Coast Truck Lines, Inc. v. Arcata Community Recycling Center, Inc.*, 846 F.2d 1239, 1244 (9th Cir.) (*West Coast Truck Lines*), cert. denied, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *see also Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Thus, section 3553(b) does not provide support for requiring district judges to rationalize Guidelines departures with reference to analogous Guidelines provisions. *See also* 18 U.S.C. § 3553(c) (requiring only that the sentencing judge state "the specific reason" for the Guidelines departure, and not indicating that the extent of departure must also be explained).

Thus, there is little statutory support for the majority's requirement that sentencing judges justify a departure sentence in terms of the structure of the Guidelines. Analysis of the Guidelines yields a similar lack of support. Although a few specific Guidelines contemplate departure by analogy, *see* United States Sentencing Guidelines § 4A1.3 (Nov.1990) (U.S.S.G.), the Guidelines do not create a general requirement that judges explain all departures with reference to the analogous Guidelines provisions. *Cf.* U.S.S.G. § 5K2.0 (stating only that "[t]he controlling decision as to whether and to what extent departure is warranted can only be made by the courts"). Again, applying traditional canons of statutory construction, we should infer that the Commission's failure to impose this requirement was deliberate. *See West Coast Truck Lines*, 846 F.2d at 1244. However, we need not rely solely on the Commission's silence, because Lira–Barraza's claim that all departures must be guided by reference to similar Guidelines has been explicitly rejected by the Commission. U.S.S.G. Ch. 1, Pt. A 4(b), p.s. (distinguishing between departures guided "by analogy or by other ... suggestions" and departures which "will remain unguided").

In the absence of statutory authority for requiring sentencing judges to explain their departure in terms of the structure of the Guidelines, I believe we should hold that such an explanation is recommended, but not required. While I agree that the reasonableness of a sentence may be gauged by reference to other Guidelines provisions, I do not believe that the district judge's failure to make this comparison should be per se grounds for reversal. Several other circuits have so held. *See, e.g., United States v. Ocasio*, 914 F.2d 330,

336 (1st Cir.1990) (rejecting any requirement that judges explain sentence by comparison to other Guidelines); *United States v. Landry,* 903 F.2d 334, 341 n. 6 (5th Cir.1990) (*Landry*) ("the district court [is not] required to scour the guidelines under unrelated criminal statutes to decide the extent of departure"); *United States v. Shuman,* 902 F.2d 873, 877 (11th Cir.1990) (*Shuman*) ("the reasonableness of a departure does not always depend on this sort of mathematical precision"); *United States v. Hummer,* 916 F.2d 186, 194 & n. 7 (11th Cir.1990) (*Hummer*) (holding that relevant analogies may provide limits for departure sentences, but stating that "we do not mean to suggest that district courts necessarily must force every aggravating factor through the guidelines structure.... The departure standard of reasonableness does not demand an overly rigorous, mathematical approach."), *cert. denied,* —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991).

I would follow these circuits and hold that the district judge's failure to determine a departure sentence with reference to the structure of the Guidelines is not in itself grounds for reversal. *See United States v. Lira–Barraza,* 897 F.2d 981, 987 (9th Cir.1990) (failure to explain extent of departure not a per se abuse of discretion). Rather, I would vote to vacate the sentence only if it is "unreasonable" when evaluated in light of the structure, standards, and policies of the Act and Guidelines. *See United States v. Pearson,* 911 F.2d 186, 191 (9th Cir.1990) (*Pearson*) (concluding that the sentence so greatly exceeds the amount suggested by comparison to other Guidelines provisions that the amount of departure is unreasonable); *Shuman,* 902 F.2d at 877 (applying an analogy not used by district court to conclude sentence was reasonable); *Hummer,* 916 F.2d at 194–95 (upholding departure under circumstances of case, although resulting sentence exceeded the one available under similar Guidelines provisions).

## II

Although I do not agree with the majority's analysis, I concur in the result. After considering the facts and circumstances of this case, and the reasons for departure, I conclude that the sentence imposed in this case was unreasonable, and must be vacated.

The district judge imposed a sentence of 36 months, or 6 times the applicable Guidelines range. The judge did not provide an explanation for the extent of the departure, and stated only that the 30 month increase was justified by Lira–Barraza's participation in a high speed chase. However, as pointed out by the majority, Lira–Barraza's sentence falls within the range provided for significantly more serious offenses, such as assault with intent to commit murder and armed robbery. *See* Maj. op. at 746. Given the wide gap between the sentence imposed and the sentence available under other similar Guidelines, and the absence of any other explanation or basis for the discrepancy, I conclude the sentence was unreasonable. *See Pearson,* 911 F.2d at 191; *Landry,* 903 F.2d at 341.

## III

There is a significant difference between using comparisons to the Guidelines as a prudential approach to set an approximate upper limit on sentences, and making these comparisons an absolute procedural requirement. By choosing the latter approach, the majority goes beyond the statute and the Guidelines. I do not believe that a sentence is "unreasonable" simply because the sentencing judge does not provide the detail of analysis preferred by the majority. Therefore, I concur in part and concur in the judgment.

THOMPSON, Circuit Judge, concurs.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the majority's decision that we should review departures from the guidelines in three steps rather than five. Majority at 745–46. I also concur in the judgment. I write separately, however, because the majority opinion fails to provide clear guidance to the district courts and

because I disagree with the majority that Congress and the Sentencing Commission intended to limit a sentencing court's discretion in selecting a sentence outside an applicable guideline range.

## I

The majority holds that "departure sentences are to be determined in light of the structure, standards and policies of the Act and Guidelines." Majority at 750–51. The majority neither defines this "standard" nor tells the district courts how it is to be applied.

Although the majority's holding might be read as nothing more than a general requirement that a departing court must look to the Sentencing Reform Act and the Sentencing Guidelines for guidance in formulating an appropriate sentence, other parts of the opinion suggest a far more rigid requirement. We are told that "[t]he essential factor" in a district court's departure decision "is that the extent of departure must be based upon objective criteria drawn from the Sentencing Reform Act and the Guidelines." *Id.* at 750 n. 13. Elsewhere the majority suggests that what it means by "objective criteria" is that a district court may not impose a departure sentence unless that sentence is "consistent with [i.e., not disparate to] other sentences fixed by the Guidelines or suggested

by Commission standards and policies." *Id.* at 749.

While I believe, because of the majority's analysis of the Sentencing Reform Act, that this last statement comprises the majority's implicit holding, at no point does the majority state clearly the standard it has adopted.[1] I find it remarkable that in an opinion long anticipated to provide clear guidance to the district courts, the majority utterly fails to do so.[2]

## II

Nothing in the Sentencing Reform Act or the Sentencing Guidelines supports the majority's assertion that Congress intended to limit the discretion of the district court in selecting a sentence outside the guidelines.

### A

The only portion of the Act on which the majority directly relies to support its holding is 18 U.S.C. § 3553(a)(6). That section provides that a sentencing court, in determining the particular sentence to be imposed, "shall consider" a range of factors, among them

the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

18 U.S.C. § 3553(a)(6) (1988).

According to the majority, subsection (a)(6) is a "statutory directive [which] ap-

---

**1.** That the majority itself is unclear about the standard it has promulgated is evident from its statement that, in adopting it, we "join the Second, Third, Fourth, Seventh, Tenth, and Eleventh Circuits." Majority at 9039. Elsewhere in the opinion the majority encourages district courts to draw from the standards adopted by those circuits. *Id.* at 750 n. 13. Yet the circuits the majority purports to join have not adopted a uniform departure standard. Of the circuits cited by the majority, two expressly require departure by analogy, *see United States v. Kim,* 896 F.2d 678, 685 (2d Cir.1990); *United States v. Ferra,* 900 F.2d 1057, 1062–64 (7th Cir.1990), while two others strongly suggest that analogies to the structure of the Sentencing Guidelines should be used but do not require them, *United States v. Kikumura,* 918 F.2d 1084, 1112–13 (3d Cir.1990); *United States v. Jackson,* 921 F.2d 985, 990–91 (10th Cir.1990), while the other two simply express general agreement with the concept of using analogies but do not otherwise

require district courts to employ them, *United States v. Hummer,* 916 F.2d 186, 194 & n. 7 (4th Cir.1990); *United States v. Shuman,* 902 F.2d 873, 876–77 (11th Cir.1990). Which of these standards has the majority adopted?

While I disagree with those circuits that have held that reliance on the Act or other "objective criteria" is required in departing from the guidelines, at least they have clearly stated what it is they mean. *Cf. Ferra,* 900 F.2d at 1062–64.

**2.** Whatever the majority's standard, it is clear that the district courts' discretion to depart from an applicable guideline range has been impinged to a considerable degree. The implicit focus of the majority's discussion is on upward departures. Yet the shackles the majority imposes on a district court's discretion to depart *upward* from the guidelines will fit just as snugly when a district court attempts to depart *downward* from the range suggested by the guidelines. *See United States v. Williams,* 891 F.2d 962, 964 (1st Cir.1989).

plies to all sentences, including those departing from the Guideline range applicable to a particular offense, and requires, at a minimum, that departure sentences be consistent with other sentences fixed by the Guidelines or suggested by Commission standards and policies." Majority at 749.

In making that assertion, the majority collapses the standard governing whether a district court should depart from the applicable guideline range into the separate question of the degree of departure from that range. In doing so, it creates a rigid sentencing requirement that was never intended by Congress and which is inherently unworkable.

The clearest evidence of the overall sentencing scheme Congress had in mind when it passed the Sentencing Reform Act is the language it used to describe the purpose of the Sentencing Guidelines.

[To] provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices....

28 U.S.C. § 991(b)(1)(B) (1988).

Congress clearly did not intend, as the majority suggests, to require proportionality in all sentences. Rather, it devised a sentencing scheme which reduced sentencing disparity through application of the guidelines, while preserving the district court's discretion to impose "individualized sentences" outside the guidelines when warranted. *See* S.Rep. No. 225, 98th

Cong., 1st Sess. 52, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3235 [hereinafter Senate Report] ("The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences.").

This overall sentencing scheme is reflected in §§ 3553(a) and 3553(b), the sections of the Act which establish the procedures a district court must follow in imposing a sentence. The court must consider the entire range of factors set out in § 3553(a),[3] not just subsection (a)(6), as the majority suggests. It must either impose a sentence within the applicable guideline range or sentence outside that range if it finds "an aggravating or mitigating circumstance" not taken into consideration by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b).

Because the language of subsection (a)(6) tracks the language of § 991(b)(1)(B), Congress, in requiring sentencing courts to consider the need to avoid "unwarranted sentencing disparity" under subsection (a)(6), was referring only to the court's decision whether or not to sentence within the guideline-specified range. That is, because the guidelines represent categories of offense behavior based on sentencing data about "defendants with similar records who have been found guilty of similar conduct," 28 U.S.C. § 991(b)(1)(B), the district court, in "determining the particular sentence to be imposed" under § 3553(a), would look to subsection (a)(6) only in deciding whether or not the presence of an aggravating or mitigating circumstance made the offense so atypical as

---

**3.** Section 3553(a) provides in part,

The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed [in light of the purposes Congress intended sentencing to serve];
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for the applicable cat-

egory of offense committed by the applicable category of defendant as set forth in the guidelines....
(5) any pertinent policy statements issued by the Sentencing Commission....
(6) *the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct;* and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a) (1988) (emphasis added).

to warrant sentencing outside the guideline range.[4]

To read subsection (a)(6) as requiring a district court to impose a departure sentence that is "consistent with other sentences fixed by the Guidelines or suggested by Commission standards and policies," Majority at 749, is contrary to the sentencing system envisioned by Congress. When the guidelines fail to account for an aggravating or mitigating circumstance, Congress anticipated that the district court would retain the discretion to impose an "individualized sentence" *outside* the range specified in the applicable guideline. 28 U.S.C. § 991(b)(1)(B). In codifying that departure power in § 3553(b) Congress nowhere indicated that the district court's discretion to impose a departure sentence was to be limited in the manner suggested by the majority.

More important, the language of subsection (a)(6) suggests that it cannot be read as the "statutory directive" the majority claims it to be. To do so would impose an unworkable, circular requirement on the district court that would preclude departure in virtually all cases.

Subsection (a)(6) refers only to "defendants with similar records who have been found guilty of similar conduct"—i.e., to the applicable guideline range. 28 U.S.C. § 991(b)(1)(B). It therefore cannot be read

to require a district court to impose a sentence that is consistent with a *different* guideline range. While other guidelines may encompass similar conduct, only the guideline-specific sentence reflects the congressional policy of reasonable uniformity in sentencing. If a departure sentence must be "consistent" with other sentences for "similar defendants with similar records," by definition that will direct the court to the *same* guideline and to the same guideline-specified range. Thus, the district court could *never* depart from that range.

If, on the other hand, the degree of departure must be consistent with some guideline-specified sentence *other* than the one directed by the appropriate sentencing range, as the majority would require, then by definition no departure could be had. Section 3553(b) provides that a court may depart only if there is an aggravating or mitigating circumstance that was "*not* adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (emphasis added). If the factor is reflected in some other guideline or policy statement, then the Sentencing Commission will reasonably have considered it and departure for that circumstance will not be allowed. Again, the district court would be unable to depart. Is this what the majority intends?[5]

---

4. That subsection (a)(6) was intended to apply only to a district court's decision to sentence within the guidelines and not to the degree of its departure from them is suggested by the Act's legislative history.

> Subsection (a)(6) ... requires judges to avoid unwarranted sentencing disparities in applying the guidelines and particularly in deciding *when* it is desirable to sentence outside the guidelines.
>
> ....
>
> If the sentencing court believed the case was an entirely typical one for the applicable guideline category, it would have no adequate justification for deviating from the recommended range. *The need for consistency in sentences for similar offenders committing similar offenses should be sufficiently important to dissuade a judge from deviating from a clearly applicable guideline range.*

Senate Report, *supra*, at 78–79, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3261–62 (emphasis added).

5. Aside from these statutory obstacles to the majority's approach, it also is fraught with practical difficulties.

The majority assumes that there are analogous guidelines. While there may be other guidelines that have some similar attributes, they are likely to also contain significant differences. *See United States v. Pearson,* 911 F.2d 186, 190–91 (9th Cir.1990) (many cases may be sufficiently atypical so as to be "ill-suited to departure by analogy"). By telling the district court that it "must" link its departure decision to similar sentences and other "objective criteria," Majority at 750 n. 13, the majority imposes a nearly insurmountable burden on a district judge faced with an "atypical" case.

How for example, should the district court in this case have identified "objective criteria" to guide it in imposing sentence? What guidelines possibly apply to an alien smuggler's high-speed chase on a public highway with persons locked in his trunk? Should the court look to the guideline for kidnapping, U.S.S.G. § 2A4.1, which provides a base offense level of 24, since

## B

That Congress never intended that all departures from the guidelines would be guided is evident from the Sentencing Guidelines. In implementing the sentencing structure Congress mandated in 28 U.S.C. § 991(b)(1)(B), the Sentencing Commission identified two types of departures based on offense characteristics. In one kind, the "guidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions." U.S.S.G. Ch. 1, Pt. A 4(b), p.s., at 1.6. In all other cases, "departure will remain unguided." *Id.* As the Commission explicitly recognized, when a departure is unguided, "[t]he controlling decision as to whether and *to what extent* departure is warranted can only be made by the [sentencing] courts." *Id.* § 5K2.0, p.s., at 5.42 (emphasis added) (citing 18 U.S.C. § 3553(b)).

The Commission was careful to distinguish these offense characteristic departures from instances in which a defendant's criminal history category fails adequately to reflect past criminal conduct. When departing on the basis of criminal history, the Commission's policy statement explicitly requires that the court depart by incremental reference to criminal history categories: "In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category as applicable." *Id.* § 4A1.3, p.s.

Clearly, the Commission knew what it was doing. Yet, despite the distinctions the Commission drew between "guided" and "unguided" offense characteristic departures and between those departures and criminal history departures, the majority concludes that all departures must be guided and that the approach used by the Commission in criminal history departures should be used for offense characteristic departures because " 'it makes sense to do so.' " Majority at 750 (citing *United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990)).

The Commission plainly meant what it said, and the majority has pointed to nothing in the Sentencing Guidelines to suggest otherwise. It attempts to explain away the Commission's express statement that some departures would remain "unguided" by arguing that the Commission intended an "unguided" departure to refer not to the degree of departure, but to whether departure may be had at all. The language used by the Commission to describe departures convincingly rebuts this claim. Had the Commission not intended "unguided" to refer to the degree of departure, it would not have referred to the sentencing court's discretion to fix the "extent" of departure, U.S.S.G. § 5K2.0, nor would it have juxtaposed an "unguided" departure, *id.* Ch. 1, Pt. A4(b), with one that is guided by "analogy" or "numerical" suggestions, *id.*

Similarly, nothing in the Guidelines supports the majority's assertion that "it

---

the aliens locked in the trunk presumably did not expect to remain there while the defendant recklessly evaded law enforcement authorities? On the other hand there are significant factual dissimilarities: the aliens voluntarily placed themselves in the trunk and expected the driver to evade law enforcement. What then?

Should the court look to those crimes which have slightly higher base offense levels than Lira–Barraza's offense level of 6 and make a judgment call as to which of these is most like the offense at hand? If so, the court would find, for example, § 2A1.4, Involuntary Manslaughter (base offense level of 10), § 2A3.3, Criminal Sexual Abuse of a Ward or Attempt to Commit Such Acts (9), § 2B4.1, Bribery in Procurement of Bank Loan and Other Commercial Bribery (8), § 2C1.2, Offering, Giving, Soliciting, or Receiving a Gratuity (7). Clearly this approach is likewise unworkable.

Even if the court does identify a guideline that contains superficial similarities, that supposedly "similar" guideline is based on empirical data and policy choices that have nothing whatsoever to do with the conduct of the defendant the judge must sentence. For example, § 2D2.3, the guideline which applies to the operation of a common carrier under the influence of drugs or alcohol, might provide a superficial similarity to Lira–Barraza's conduct since it reflects in part the risk to passengers when a person operates a motor vehicle in an impaired and presumably reckless manner. But why should the district court's discretionary decision to account for the risks that Lira–Barraza's high-speed chase posed to his passengers and fellow travelers on the interstate be constrained by the policy considerations and sentencing practices derived from accidents involving drug- or alcohol-impaired common carrier drivers?

makes sense" to treat criminal history and non-criminal history departures in a like manner. Criminal history categories are intended to reflect recidivism and the future likelihood of criminal behavior. U.S.S.G. Ch. 4, Pt. A, intro. comment. Because they perform this predictive function, *see generally* United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements*, Ch. 5, Pt. A (June 1987), and because the criminal history categories are carefully calibrated to increase punishment with recurrent criminal activity, *id.*, departure by incremental analogy is logically required. Those aspects of the criminal history categories that make departure by analogy an inherent requirement are wholly absent in the guidelines for offense conduct. Unlike criminal history categories, the individual offense guidelines are not incremental, cross-referenced elements of an overall sentencing matrix. Each guideline sets a range of punishment for a particular crime, and nothing in the overall structure of the Sentencing Guidelines suggests that a departure from one guideline should somehow be linked to an entirely different guideline.

In short, the Commission made a number of policy choices in devising the sentencing scheme Congress required it to create. True to Congress's commitment to "individualized sentencing," 18 U.S.C. § 3553(b); 28 U.S.C. § 991(b)(1)(B), the Commission explicitly stated that some departures would be truly "unguided," that is, fashioned without reference to the guidelines. Just as explicitly, the Commission stated that only criminal history departures should be "ratcheted up" by reference to the Guideline's sentencing table. The majority can point to nothing in the Act or the Guidelines to justify its decision to substitute its judgment for that of Congress and the Sentencing Commission.

### C

The only other statute upon which the majority relies is 18 U.S.C. § 3553(b). When a crime is not covered by an applicable guideline, section 3553(b) requires a sentencing judge to consider the structure of the Sentencing Guidelines and the Commission's policy statements in determining a sentence. The statute does not impose a similar requirement when a guideline applies to a crime but the district court departs from the guideline-specified range because of the presence of an aggravating or mitigating circumstance.

Ignoring well-settled canons of statutory construction, the majority finds "no apparent reason why the courts should be required to link to the sentencing structure of the Act a sentence imposed for which there is no Guideline at all, but would be free to disregard the sentencing structure when there is a Guideline specifically applicable to the offense but an atypical aggravating circumstance is present." Majority at 749.

" 'The short answer is that Congress did not write the statute that way.' " *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Naftalin*, 441 U.S. 768, 773, 99 S.Ct. 2077, 2081, 60 L.Ed.2d 624 (1979)). Where Congress includes particular language in one section of a statute but omits it elsewhere in the same statute, absent contrary legislative intent, "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* The majority, however, points to nothing in the statute or its legislative history that entitles it to disregard Congress's decision that departures based on aggravating or mitigating circumstances should be unguided.

Moreover, in second-guessing Congress, the majority ignores the reasons Congress gave for writing the statute as it did. Although the Sentencing Guidelines are intended to be a comprehensive system encompassing most federal crimes, Congress recognized that situations may arise in which no guideline applies to a particular crime—"where a new crime is enacted and a defendant is convicted of that crime before sentencing guidelines for the crime are established." H.R.Rep. No. 797, 99th Cong., 2d Sess 19, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6138, 6142.

It therefore amended § 3553(b) after its original enactment to provide that under those circumstances the sentence imposed should be guided by reference to the Sentencing Guidelines. *See* Criminal Law and Procedure Technical Amendments Act of 1986, Pub.L. No. 99–646, § 9, 100 Stat. 3592, 3593. Requiring guidance when no guideline applies to a crime was consistent with the purpose of the Sentencing Reform Act. Because the Act contains a "comprehensive statement of the Federal law of sentencing," Senate Report, *supra*, at 50, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3233, and because the Sentencing Guidelines are intended to assure the consistent application of that statement, *id.* at 51, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3234, it would be contrary to the Act if a district court were allowed, in the absence of an applicable guideline, to sentence a defendant without any reference whatsoever to the Guidelines.

A different set of policy considerations is at work, however, when a court departs from an applicable guideline range because of the presence of an aggravating or mitigating circumstance. In drafting the Act, Congress anticipated that departures from an applicable guideline range were necessary "to permit individualized sentences when warranted." 28 U.S.C. § 991(b)(1)(B). Those departures were, in Congress's mind, an integral part of the Sentencing Commission's "continuous reex-

amination of its guidelines and policy statements." Senate Report, *supra*, at 80, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3263; *see also id.* at 52, 151, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3235, 3334. Because they are used by the Commission "to refine the guidelines to specify more precisely when departures should and should not be permitted," *see* U.S.S.G. Ch. 1, Pt. A 4(b), p.s. at 1.6, departures are "essential to the future resiliency and health of the Guidelines," Broderick & Wolf, *The Guideline Amendment Process*, 3 Fed.Sent.Rep. 276, 276 (1991).[6] This is precisely what happened in this case. After a number of courts affirmed departures for high-speed chases, the Sentencing Commission amended the Guidelines to include a specific guideline for reckless endangerment during flight. *See* U.S.S.G. § 3C1.2. In short, the system worked as it was meant to.

### D

Congress envisioned "limited" appellate review of departure sentences. Senate Report, *supra*, at 149, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3332. It therefore imposed a reasonableness standard. "Reasonableness" is to be determined by assessing *all* the factors set out in § 3553(a) and the reasons given by the district court for selecting a sentence outside the guideline range. 18 U.S.C. § 3742(e)(3).

---

**6.** The majority claims that the Commission will derive "more useful guidance" from guided departures than from those that are unguided. That, however, is a decision for the Commission, not this court, to make. In fact, the Commission has implied that its work in revising the guidelines is best served by actual sentencing practices. *See* United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* Ch. 2 at 9 (June, 1987) (discussing the role of empirical sentencing data in, *inter alia*, future monitoring and evaluation of the guidelines).

It makes sense that the Commission should rely on actual, unguided sentences in making adjustments to the guidelines since the guidelines themselves are drawn initially from the actual discretionary sentencing practices of judges in the pre-guideline era. *See id.* Ch. 3, Pt. C, at 16 ("The Commission sought to resolve the

practical problems of developing a coherent sentencing system by taking an empirical approach that starts from existing sentences."); 28 U.S.C. § 994(m) (mandating that the Commission initially base the Sentencing Guidelines on average sentencing practices); Senate Report, *supra*, at 177, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3360.

That the Commission anticipated that departure sentences would be unguided—and that those departures would be closely monitored for future guideline revision—is evident from the comments of Commissioner Ilene Nagel:

"[T]he potential disparity introduced by excessive judicial "departures" from the guidelines will be ·closely monitored. Revisions will be made to correct intolerable levels of *inappropriate* departures."

Nagel, *Structuring Sentencing Discretion: The New Federal Sentencing Guidelines*, 80 J.Crim.L. & Criminology 883, 939 (1990).

The majority, however, discards this standard. As defined by the majority, "reasonableness ... assumes a range of permissible sentences." Majority at 751. The focus of that range, the majority elsewhere suggests, is on only *one* of the factors in § 3553(a): subsection (a)(6)'s requirement that the district court "avoid unwarranted disparities among defendants with similar records who are guilty of similar conduct." *Id.* at 749. In effect then, the majority creates a per se rule that departure sentences which are not disparate to sentences imposed on "other defendants with similar records" are "reasonable" while those that are not are subject to reversal.

As noted above, the problem with this standard is that it is circular. There is no source of empirical data available to the district court about "defendants with similar records who are guilty of similar conduct"; that data is subsumed within the applicable guideline range. When a district court departs from that range because of an aggravating or mitigating circumstance, no other guideline can provide the data about "similar defendants" which the majority requires the district court to consider. To adopt a standard of appellate review which focuses almost exclusively on whether a departure sentence is not disparate to sentences imposed on "similar defendants," as that term is defined in subsection (a)(6), is in effect, to preclude a district court from ever departing from the guidelines.[7]

The majority discards the broad reasonableness standard Congress intended because it concludes that it fails to facilitate "rational review" of departure sentences. *Id.* I cannot agree. Our use of a reasonableness standard in a wide range of other contexts has not diminished our ability to engage in rational appellate review. More important, Congress imposed a reasonableness standard, rather than a more searching standard of review, for a purpose. It

intended to preserve the discretion of the district courts to impose an "individualized sentence[ ]" outside the guidelines range when appropriate. 28 U.S.C. § 991(b)(1)(B). Because disparity is inevitable in a sentencing scheme intended to preserve "individualized sentencing," *see* Senate Report, *supra*, at 149, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3332 ("Because sentencing judges retain the flexibility to sentence outside the guidelines, it is inevitable that some of the sentences outside the guidelines will appear to be too severe or too lenient."), a reasonableness standard is necessary to protect that discretion from overzealous appellate review, *see id.* at 150, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3333 ("The sentencing provisions of the reported bill are designed to preserve the concept that the discretion of a sentencing judge has a proper place in sentencing and should not be displaced by the discretion of an appellate court."). The majority today imposes the very standard Congress has implicitly rejected.

### III

Because Congress intended that sentencing judges would retain the discretion to sentence outside the guidelines, and because Congress in no way indicated that sentencing judges should be required to link their departure sentences to the "structure, standards and policies of the Act and Guidelines," I cannot join in the majority opinion. As the First Circuit has observed in rejecting the formulaic approach adopted by the majority today,

Reasonableness is a concept, not a constant. The guidelines have cabined the district court's sentencing discretion to a considerable extent, interposing a more structured sentencing regimen. Nevertheless, neither Congress nor the Commission contemplated doing away completely with individualized sentencing. Appreciating, as we do, the unaccus-

---

7. Even if subsection (a)(6) were given a broader reading, by adopting an appellate standard which focuses narrowly on the presence or absence of a "similar" sentence the majority imposes a significant constraint on the discretion

of the district court to depart from the guideline range. Absent a ready analogy, the district court may simply decline to depart rather than face the searching appellate review the majority authorizes.

tomed limitations surrounding the district court's discretion, we are reluctant to stifle the modest amount of play remaining in the joints.

*United States v. Ocasio,* 914 F.2d 330, 336 (1st Cir.1990) (citations omitted). Similarly, because Congress requires only that we review departures from the guidelines for "reasonableness," I cannot join Chief Judge Wallace in concluding that we should review departures in light of the criteria identified by the majority. To do so would eventually compel the district courts to employ the formalistic decision-making the majority seeks to require in all departure decisions. Rather, I would adopt the position taken by the First Circuit and hold that

> [w]here valid grounds for departure are present, we will uphold the sentencing judge's resolution of the matter so long as the circumstances warranting the departure and the departure's direction and intent, are in reasonable balance.

*Id.* at 337 (citations omitted).

In conclusion, while both the majority and I direct the district court to provide a statement of reasons for the extent of its departure, I categorically reject any effort to require of a departing court more than reasonableness in its selection of a sentence outside the guideline range.

## IV

While the district court provided an adequate statement of reasons for its decision to depart from the applicable guideline range, *see United States v. Lira–Barraza,* 897 F.2d 981, 986 n. 12 (9th Cir.1990), it imposed sentence without discussing how it arrived at the thirty-six-month term of imprisonment given the defendant.

Without an explanation of the degree of departure, we are unable to assess the reasonableness of the sentence selected by the district judge. A statement explaining the process by which the judge derived the sentence is essential in every departure, but is particularly important where, as here, the sentence imposed is several times over that suggested by the guideline range.

The sentence must be vacated and remanded for resentencing. I therefore concur in the judgment.