951 F.2d 363
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto CAMPOS-QUINTERO, aka Hector Tapia-Galeana,
Defendant-Appellant.
 No. 91-50121.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 12, 1991.*
Decided Dec. 18, 1991.
As Amended on Denial of Rehearing and Rehearing
En Banc Aug. 31, 1992.
 
 Before WALLACE, Chief Judge, SCHROEDER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Alberto Campos-Quintero appeals his sentence imposed following conviction on a guilty plea to transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(B). Campos-Quintero contends the district court erred by departing upward from the applicable United States Sentencing Guidelines range. Campos-Quintero argues that the district court's departure was based on his participation in a high speed chase, a circumstance of a kind and to a degree already adequately considered by the Sentencing Commission. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 
 3
 We recently articulated a three-part test for evaluating a district court's decision to depart from the presumptively applicable Guidelines range. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). First, we determine de novo whether the district court identified an aggravating circumstance of a kind or to a degree not adequately taken into account by the Sentencing Commission. Id. at 746. Second, we review for clear error the district court's factual findings supporting the existence of the aggravating circumstance. Id. Third, we review for abuse of discretion whether the extent of the departure was "unreasonable." Id. at 747. "If the sentencing court based the departure on factors that the Sentencing Commission already considered in formulating the Guidelines, then the departure is impermissible." United States v. Hoyungowa, 930 F.2d 744, 746 (9th Cir.1991) (citations omitted). Here, the departure was based on the district court's interpretation of two separate Guidelines sections, U.S.S.G. §§ 2L1.1 and 3C1.2.[1]
 
 1. The Aggravating Circumstance
 
 4
 Campos-Quintero agreed to drive five undocumented aliens across the international border with Mexico at the San Clemente checkpoint. Campos-Quintero arrived at the border at approximately 5:45 a.m., stopped his automobile and identified himself to Border Patrol agents as a United States citizen. Agents began to question the other occupants of the car and directed Campos-Quintero to the secondary inspection area; instead, Campos-Quintero accelerated north on Interstate 5 into the United States. Border Patrol units pursued Campos-Quintero for ten miles at speeds reaching 110 miles per hour. During the course of the chase, Campos-Quintero left the freeway and entered Camp Pendleton Military Base where he drove through a parking lot and crashed through a barricade of empty oil drums hastily erected by the military police in an attempt to stop him. He then returned to the freeway, heading southbound, and eventually came to a stop due to the actions of the pursuing agents.
 
 
 5
 2. Smuggling, Transporting, or Harboring an Unlawful Alien
 
 
 6
 The district court premised its departure on the extreme danger created as a result of Campos-Quintero fleeing the Border Patrol agents and the inhumane treatment to which he thereby exposed the aliens he was smuggling. The Commentary to Section 2L1.1 states that the "Commission has not considered offenses involving ... dangerous or inhumane treatment [of aliens]. An upward departure should be considered in those circumstances." U.S.S.G. § 2L1.1, comment. n. 8 (1990).
 
 
 7
 Campos-Quintero contends that the district court may not depart on this basis because the conduct giving rise to the dangerous or inhumane treatment of the aliens is encompassed within the provisions of Section 3C1.2. Campos-Quintero argues that because high-speed chases may result in adjustment of his offense level under Section 3C1.2, participation in a high-speed chase is a factor already considered by the Sentencing Commission and can not be a basis for a departure under Application Note 8 of Section 2L1.1.
 
 
 8
 This contention lacks merit. The adjustment for reckless endangerment during flight applies whenever a "defendant recklessly created a substantial risk of death or bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2 (1990). This adjustment can apply even if a defendant was the sole occupant of his vehicle during the course of a high-speed chase. Further, the Guidelines specifically inform us that the Sentencing Commission, when formulating the Guideline applicable to the smuggling of illegal aliens, did not consider a situation in which the smuggler engaged in inhumane or dangerous treatment of aliens during the course of his offense. U.S.S.G. 2L1.1, comment. n. 8 (1990). Thus, the fact that the Sentencing Commission did consider that a defendant might endanger others in the course of fleeing law enforcement officers does not preclude the district court from considering that reckless flight in a vehicle containing illegal aliens subjected those aliens to dangerous or inhumane treatment.
 
 
 9
 Here, the district court found that the high-speed chase endangered the lives of the alien passengers of Campos-Quintero's vehicle and that this endangerment amounted to inhumane treatment. In light of the evidence in this case, we cannot say the district court clearly erred by finding that the threat to the safety of the aliens resulting from the high-speed chase was a factor warranting departure from the applicable Guidelines range. See Lira-Barraza, 941 F.2d at 747. Nor can we say that the district court abused its discretion when it guided the extent of its departure by reference to the number of individuals whom Campos-Quintero endangered as a result of engaging in the high-speed chase. See id.
 
 
 10
 Because the district court did not err in basing its departure on § 2L1.1, we need not consider Campos-Quintero's argument that the court erred in alternatively basing its departure on § 3C1.2. any error in basing departure on § 3C1.2 was harmless, because the district court would have imposed the same sentence had it relied solely on § 2L1.1. See supra n.1; Sentencing Transcript at 21-22 ("I could give an upward departure of four under 2L1.1 or 3C1.2, and uder both would do that.") (remarks of District Judge Keep); Williams v. United States, 112 S.Ct. 1112, 1120-21 (1992) ("[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed.").
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Judith N. Keep was elevated to the position of Chief Judge in the United States District Court for the Southern District of California after the completion of district court proceedings in the instant case
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At sentencing, Campos-Quintero objected to an upward departure based on either of these two sections of the Guidelines. The district court rejected these arguments, stating, "[n]ow, insofar as your legal argument about the 3C1.2, as well as 2L1.1. .. I would point out to you--I mean, this is probably the absurdity of the guidelines in and of itself, but basically I think that under either 3C1.2 or 2L1.1 the court would be free to, in fact, depart and add four points."