CANBY, Circuit Judge:
 

 Luscier appeals from the sentence the district court imposed upon his pleas of guilty to two counts of assault with a dangerous weapon, 18 U.S.C. §§ 1151, 1153, and one count of second degree murder, 18 U.S.C. §§ 1111, 1151, 1153.
 

 BACKGROUND
 

 The offenses for which Luscier was convicted occurred on the Quinault Indian Reservation in Taholah, Washington. After an evening of heavy drinking and several hits of LSD, Luscier broke into the home of his aunt, Mary Slade. Slade, an eighty-three-year-old tribal elder who was unable to move about without the aid of a walker, was asleep in her bedroom. Luscier’s cousin, Kora Ward, was sleeping in an adjacent bedroom with her boyfriend, Anthony Juarez, and her infant son. Ward’s other child, a boy of eleven, was asleep on the living room couch.
 

 Luscier went into his aunt’s bedroom and stabbed her to death with a sharpening steel. Awakened by Slade’s screams, Kora Ward saw Luscier approaching her bedroom. Luscier was still holding the sharpening steel, and he shouted for Ward to go into the bathroom, threatening to kill her children if she did not obey. Ward pushed the bedroom door shut before Luscier could enter the room. Juarez held it closed while Luscier repeatedly thrust the sharpening steel through the door. Ward and her children escaped through a window and then Juarez, too, dove through the window to safety. Within a few hours, tribal police arrested Luscier.
 

 Luscier pleaded guilty to second-degree murder and two counts of assault with a deadly weapon. The district court sentenced him under the Sentencing Guidelines to 327 months imprisonment.
 

 The claims Luscier raises in this appeal concern three aspects of the district court’s application of the sentencing guidelines. First, although guidelines sections 4A1.1 and 4A1.2 place Luscier in criminal history category IY, the district court decided to depart upward and placed Luscier in criminal history category V. The court reasoned that category IV did not adequately represent Luscier’s true criminal history because the guideline calculus did not take into account Luscier’s history of drug abuse and a prior breaking and entering offense for which Luscier had been convicted in tribal court.
 

 Second, the district court decided to classify the two assault convictions as “aggravated” rather than “minor” assaults. Even when calculated as aggravated assaults, however, the offenses fall more than nine levels below the offense level for murder and thus would ordinarily be disregarded for the purposes of sentencing. U.S.S.G. § 3D1.4(c). The district court ruled that the resulting sentence would in
 
 *1510
 
 adequately reflect the seriousness of Luscier’s crime. Citing the extreme psychological injury his victims suffered, Luscier’s extreme conduct, and the property damage Luscier caused, the court departed upward pursuant to section 5K2.0, increasing by one the offense level for each of the two assaults. Adding one unit for each of the assaults to Luscier’s total offense level, the court arrived at a combined offense level of 35.
 
 [1]
 

 Finally, the district court ruled that Mary Slade qualified as a vulnerable victim under section 3A1.1 of the guidelines, and accordingly the court increased the base offense level for the murder conviction by two.
 
 [2]
 

 DISCUSSION
 

 I. THE CRIMINAL HISTORY CATEGORY
 

 Luscier contends that the district court erred in placing him in criminal history category Y. We review the court’s decision to deviate from the applicable category in accordance with the methodology established in
 
 United States v. Lira-Barraza,
 
 941 F.2d 745 (9th Cir.1991) (en banc);
 
 see also United States v. Richison,
 
 901 F.2d 778, 780-81 (9th Cir.1990). Initially we must determine whether, in view of the Sentencing Commission’s guidelines, policy statements and official commentary, the district court found sufficient evidence to conclude that Luscier’s tribal conviction and prior drug use constitute aggravating circumstances “of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.” 18 U.S.C. § 3553(b) (1988);
 
 Lira-Barraza,
 
 941 F.2d at 746. This is a question of law subject to de novo review.
 
 Lira-Barraza,
 
 941 F.2d at 746.
 

 A. Luscier’s History of Drug Abuse
 

 In formulating the criminal history guidelines, the Sentencing Commission clearly contemplated the effect prior drug abuse should have on the length of custody. In the introductory comments to the criminal history chapter of the guidelines the Commission states, “While empirical research has shown that other factors are correlated highly with the likelihood of recidivism,
 
 e.g.,
 
 age and drug abuse, for policy reasons they were not included here at this time.” U.S.S.G. ch. 4, pt. A intro, commentary.
 

 It is in the guideline provisions for specific offender characteristics that the Commission addresses drug dependence. In the policy statement contained in section 5H1.4, the Commission acknowledges again that “[sjubstance abuse is highly correlated to an increased propensity to commit crime.” The Commission recommends, therefore, that when an offender has a history of drug or alcohol abuse the sentencing court should condition supervised release on the offender’s participation in a substance abuse rehabilitation program. U.S.S.G. § 5H1.4 policy statement (“p.s.”).
 

 The introductory comments to the criminal history chapter, viewed in conjunction with section 5H1.4, reflect the fact that the Commission did contemplate the effect that a defendant’s history of drug use should have on the length of custody. It appears that, faced with a choice between competing policies, the Commission opted for a sentencing scheme that encourages defendants to admit to and seek treatment for drug dependency, rather than one that treats more severely defendants who have a history of drug abuse.
 
 See U.S. v. Richison,
 
 901 F.2d 778, 781 (9th Cir.1990) (holding that departure for drug dependency is warranted only in the exceptional case). Thus, while in the ordinary case drug addiction will influence the conditions of supervised release, past drug use should not affect time in custody unless the defendant's condition is so extraordinary that departure, rather than the measures discussed in section 5H1.4, is required.
 
 Id.
 

 
 *1511
 
 No facts were presented showing that Luscier’s past drug use was exceptional within the meaning of
 
 Richison.
 
 Nor was there any showing why a longer term of incarceration was more appropriate than a long period of supervised release during which Luscier would be required to participate in a drug rehabilitation program. Therefore, we must vacate the sentence and remand the case for resentencing.
 
 [3]
 

 Because we find that the district court did not identify evidence justifying departure, we will not proceed with the second and third steps of the
 
 Lira-Barraza
 
 analysis.
 

 B. Luscier’s Tribal Court Conviction
 

 The district court should not have relied on Luscier’s prior tribal conviction as a reason for departing from the applicable criminal history category. The guidelines provide that a sentencing court may consider a tribal conviction in determining whether to depart. U.S.S.G. § 4A1.3(a) p.s. As we have stated above, however, the tribal conviction is not a valid basis for departure unless it qualifies as an aggravating circumstance “of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.” 18 U.S.C. § 3553(b);
 
 Lira-Barraza,
 
 941 F.2d at 746. The
 
 Lira-Barraza
 
 rule reinforces section 4A1.3, which provides that “[a] departure ... is warranted when the criminal history category significantly under-represents the seriousness of the defendant’s criminal history or the likelihood that the defendant will commit further crimes.” The examples listed in the policy statement accompanying section 4A1.3 uniformly refer to either “serious” or “large-scale” offenses. U.S.S.G. § 4A1.3 p.s.
 

 Luscier was convicted in tribal court for breaking and entering. He was sentenced to thirty days in jail. The district court did not find, and simply could not have found, that because of this single tribal conviction criminal history category IV significantly under-represents the seriousness of Luscier’s criminal history. We hold, therefore, that the district court erred in relying on Luscier’s tribal conviction as a ground for departing upward.
 

 II. THE CRIMINAL OFFENSE LEVEL
 

 A. The Base Offense Level Applicable to the Assaults
 

 Luscier asserts that the district court did not apply the correct base offense level to the two assault counts. We review de novo the district court’s interpretation of the Sentencing Guidelines.
 
 United States v. Blaize,
 
 959 F.2d 850, 851 (9th Cir.),
 
 cert. denied,
 
 — U.S.-, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992).
 

 In determining the base offense level, the court should apply the guideline “most applicable to the offense of conviction.” U.S.S.G. § lB1.2(a);
 
 see United States v. McCall,
 
 915 F.2d 811, 813-15 (2d Cir.1990). According to the Commentary accompanying section 2A2.2, “ ‘[Aggravated assault’ means a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm
 
 {i.e.,
 
 not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony.” U.S.S.G. § 2A2.2 commentary app. note 1. Aggravated assaults are assigned a base offense level of fifteen. Felonious assaults that do not fall within the scope of section 2A2.2 are classified as “minor assaults.” The base offense level for a minor assault with a dangerous weapon is only six.
 
 See id.
 
 § 2A2.3(a)(l).
 

 Luscier pleaded guilty to two counts of assault with a dangerous weapon. The district court categorized the assaults as aggravated and calculated the offense levels in accordance with section 2A2.2 of the guidelines. The government maintains that because Luscier committed the assaults with a dangerous weapon, the district court applied the appropriate offense level. This argument ignores the fact that
 
 *1512
 
 Luscier’s conduct does not satisfy the definition of aggravated assault: Luscier was not found to have committed the assaults with intent to do bodily harm or another felony and the assaults did not result in any kind of bodily injury. That Luscier committed the assaults with a dangerous weapon is not, in itself, justification for classifying them as aggravated. The district court should have applied the base offense level for a minor assault with a dangerous weapon, as provided in section 2A2.3(a)(l).
 

 B. The Combined Offense Level
 

 Luscier also contends that, in calculating the combined offense level, the district court should not have departed from the guidelines and added one unit for each of the two assaults. As with the departure in the criminal history category, we review this departure in accordance with the approach established in
 
 Lira-Barraza,
 
 941 F.2d at 746-47. We begin by inquiring whether the aggravating circumstances the district court relied on in support of the departure are of a kind or to a degree not adequately taken into account in the guidelines.
 
 Id.
 
 at 746.
 

 The guidelines identify several factors that “the Commission [was not] able to take into account fully in formulating the guidelines.” U.S.S.G. § 5K2.0 p.s. The district court relied on three of these: the extreme psychological injury the surviving victims suffered, U.S.S.G. § 5K2.3 p.s., the extreme nature of Luscier’s conduct, U.S.S.G. § 5K2.8 p.s., and the property damage that Luscier caused, U.S.S.G. § 5K2.5 p.s. The district court acknowledged that none of these factors taken alone was sufficiently aggravating or severe to justify departure. According to the district court, however, the combined effect of these factors renders Luscier’s crime so serious as to exceed the typical murder/assault offense contemplated in the guidelines.
 

 The government argues that when the district court discussed these three factors, it was not relying on them to justify departure. Rather, the government maintains that “the Court’s departure was based on the Court’s conclusion that the guideline-calculated sentences for the two assault-with-a-dangerous-weapon convictions did not reflect the seriousness of those convictions.” According to the government, the court merely discussed psychological injury, extreme conduct and property damage
 
 to
 
 “emphasize” its
 
 conclusion.
 

 There are two problems with the government’s argument. First, it ignores the district court’s own statements that indicate that it was relying on the combination of factors to justify departure. For example, after discussing each of the three factors, the court concluded, “Now you put all those things together, and it appears very clear to me that under the grouping rules that we deal with here, the offense levels for those two assaults are not adequate to reflect their seriousness.” More significantly, however, if the government were correct in asserting that the district court justified its departure not on any particular aggravating circumstances, but, rather, on the more conclusory finding that the sentence prescribed by the guidelines did not adequately reflect the seriousness of the assault convictions, we would be forced to conclude that the district court’s decision fell short of the
 
 Lira-Barraza
 
 standard.
 
 Lira-Barraza
 
 requires sentencing courts to
 
 identify
 
 aggravating circumstances justifying departure.
 
 See Lira-Barraza,
 
 941 F.2d at 746-47.
 

 We assume without deciding that, in identifying an aggravating circumstance supporting departure, the district court did not err in relying on a combination of factors which, standing alone, would not justify departure. We proceed to the second step of the
 
 Lira-Barraza
 
 and “review for clear error” the court’s factual finding that the combination
 
 of
 
 the psychological harm the victims suffered, Luscier’s extreme conduct, and the property damage rendered Luscier’s offense so serious as to fall outside the scope of the guidelines.
 
 Id.
 
 at 746-47.
 

 The district court clearly erred in ruling that the evidence supported departure. To begin with, the court did not find
 
 *1513
 
 that Luscier’s victims suffered psychological injury “much more serious than that normally resulting” from this type of offense. U.S.S.G. § 5K2.3 p.s. The only testimony regarding the extent of the victims’ trauma came from the defendant’s expert, Dr. Wise, who testified on direct that the victims were experiencing a normal psychological reaction to the event. Dr. Wise based his conclusion on records from the Quinault Mental Health Services and a letter to the district court from Kora Ward, written five months after the murder, in which Ward states that because of the stress of the event she had to move from her aunt’s house, was having difficulty sleeping, was seeing a counselor, and was afraid of the dark and being alone. The government did not contradict Dr. Wise’s testimony. Although it does indicate some psychological damage, the record does not support the conclusion that Luscier caused his victims unusually grave psychological injury.
 

 The district court also concluded that although Luscier’s conduct was not extreme, it came “near to that under all of the circumstances.” Section 5K2.8 defines “extreme conduct” as that which is “unusually heinous, cruel, brutal, or degrading to the victim.... Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.”
 
 Id.
 
 p.s. Nothing in the record suggests that Luscier’s behavior approached the level of extreme conduct described in section 5K2.8.
 
 Cf. United States v. Roberson,
 
 872 F.2d 597, 602-04 (5th Cir.),
 
 cert. denied,
 
 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989) (holding that where defendant was convicted of credit card fraud, concealing and burning body of credit card owner constituted extreme conduct). Luscier committed the assaults while in a drug- and alcohol-induced fog. He threatened to harm the victims and repeatedly pierced the door with a sharpening steel. The victims, however, escaped quickly and without physical injury. The record does not support the district court’s characterization of Luscier’s offense as “near to” extreme conduct as defined in the guidelines.
 

 The third aggravating factor that the district court considered was the property damage Luscier caused. Guideline section 5K2.5 provides that property damage may be an aggravating circumstance justifying departure if the damage was “not taken into account within the guidelines.” The guideline adds:
 

 The extent of the increase ordinarily should depend on the extent to which the harm was intended or knowingly risked and on the extent to which the harm to property is more serious than other harm caused or risked by the conduct relevant to the offense of conviction.
 

 The only property damage reflected in the record — the harm Luscier caused to the door when he repeatedly punched the sharpening steel through it — pales in comparison with the harm that Luscier threatened to inflict on his assault victims. This relatively trivial amount of property damage cannot fairly be considered in deciding whether to depart from the guidelines.
 

 Under the Sentencing Guidelines, “departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.” U.S.S.G. § 5K2.0 p.s. A combination of typical factors does not create an atypical case: taken together, the factors the district court relied on in support of departure do not render Luscier’s offense substantially more egregious than the kinds of offenses contemplated in the guidelines.
 
 Cf. United States v. Rosen,
 
 896 F.2d 789, 791-92 (3d Cir.1990) (holding that combination of unextraordinary mitigating factors in offender’s favor does not justify downward departure). We hold, therefore, that the district court’s finding that the evidence supported departure was clearly in error.
 

 The district court’s decision to depart was unquestionably influenced by the fact that, under U.S.S.G. section 3D1.4(c), the two assaults would be disregarded in determining Luscier’s combined base offense level because they were more than nine offense levels below the level for second
 
 *1514
 
 degree murder. The district court was of the view that the assaults should not go unrecognized in the offense level. Departure, however, created more distortion than the regular guideline procedure. By adding one point for each of the two assaults, the district court gave Luscier an offense level equivalent to that which he would have received if he had committed two additional offenses of seriousness equal to or only slightly less than that of the murder. U.S.S.G. § 3D1.4(a).
 
 [4]
 
 The guidelines, on the other hand, would disregard the two assaults as being overshadowed by the far more serious crime of murder, but would permit them to “provide a reason for sentencing at the higher end of the sentencing range.” U.S.S.G. § 3D1.4(c). The sentencing range for Luscier, with no departure, is 188 to 235 months. This extensive range offers adequate opportunity for the district court to take the assaults into account.
 

 III. THE VULNERABLE VICTIM ADJUSTMENT
 

 Luscier asserts that the district court should not have added two points to increase the base offense level for the murder conviction by two because Mary Slade was a vulnerable victim. According to Luscier, the court should not have applied the vulnerable victim adjustment because at the time of the murder Luscier was too intoxicated to know that Slade was vulnerable. We reject Luscier’s assertion. Section 3A1.1 of the guidelines states:
 

 If the defendant knew or
 
 should have known
 
 that a victim of the offense was unusually vulnerable due to age, physical or mental condition ... increase by 2 levels.
 

 (emphasis added). The district court found that Luscier was “responsible ... for his level of intoxication and he should have known that [Slade] was vulnerable.” The district court’s finding is supported by the record and we accord it due deference.
 
 See United States v. Caterino,
 
 957 F.2d 681, 683 (9th Cir.),
 
 cert. denied,
 
 — U.S.-, 113 S.Ct. 129, 121 L.Ed.2d 83 (1992). We hold, accordingly, that the district court’s decision to apply the vulnerable victim adjustment was not improper.
 

 The sentence is VACATED and the case REMANDED for further proceedings.
 

 [1]
 

 . The court deducted two points from the offense level for the murder count because Luscier had accepted responsibility for the crime. U.S.S.G. § 3El.l(a).
 

 [2]
 

 . Because the district court subtracted two points for Luscier’s acceptance of guilt, the combined offense level used for determining the sentencing range was thirty-five.
 

 [3]
 

 . Luscier also contends that he did not receive adequate notice of the sentencing court's intention to use his past drug use as a ground for deviating from the guidelines. Because of our holding on the validity of past drug use as a factor warranting departure, we need not decide the notice issue.
 

 [4]
 

 . For example, the same combined offense score as that reached by the district court would have applied if Luscier had been convicted of three counts of second degree murder.