988 F.2d 126
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nelson VALENCIA-TORO, Defendant-Appellant.
 No. 92-50301.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1993.
Decided Feb. 23, 1993.
 
 Appeal from the United States District Court for the Central District of California, No. CR-91-0748-JMI-01; James M. Ideman, District Judge, Presiding.
 C.D.Cal.
 VACATED AND REMANDED.
 Before PREGERSON, LEAVY and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Nelson Valencia-Toro pled guilty to three counts of falsely stating he was not an illegal alien on a federal firearms acquisition form, in violation of 18 U.S.C. § 922(a)(6). He also pled guilty to five counts of illegally possessing firearms as an illegal alien, in violation of 18 U.S.C. § 922(g)(5). He appeals his 33-month sentence under the sentencing guidelines. He contends that the district court erred when it departed upward seven offense levels. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We vacate the sentence and remand for resentencing.
 
 I. BACKGROUND
 
 3
 Nelson Valencia-Toro is a Colombian citizen who at all relevant times was in the United States unlawfully. Between May 16 and December 7, 1988, Valencia-Toro purchased semi-automatic assault rifles (Norinco AK-47's and Colt AR-15's) from various gun shops in the Los Angeles area under the name of Nelson Valencia. For each of the purchases, Valencia-Toro falsely stated on a Bureau of Alcohol, Tobacco, and Firearm ("ATF") acquisition form that he was not an illegal alien.
 
 
 4
 Valencia-Toro purchased the rifles for an individual named Alberto Ramirez, whom he met at a discotheque. Ramirez paid Valencia-Toro twenty to forty dollars for each firearm purchase. Valencia-Toro did not inquire why Ramirez wanted the rifles. He did not know Ramirez's address, and he had not seen Ramirez since December 1988.
 
 
 5
 On September 30, 1991, Valencia-Toro pled guilty to three counts of making a false statement on a federal firearms acquisition form in violation of 18 U.S.C. § 922(a)(6). He also pled guilty to five counts of illegally possessing firearms as an illegal alien in violation of 18 U.S.C. § 922(g)(5). There is evidence that Valencia-Toro purchased thirteen rifles. However, he pled guilty to counts involving nine rifles.
 
 
 6
 Two hearings were held regarding Valencia-Toro's sentencing, January 27 and April 27, 1992. The parties agreed that the base offense level was 11 under U.S.S.G. § 2K2.1 (effective November 1, 1987) ("the 1987 section 2K2.1"). The government then requested that the district court depart upward seven levels because Valencia-Toro illegally transferred the rifles with the certain or reasonable belief that the rifles would be used for an illegal purpose. The government also requested that the district court depart upward because Valencia-Toro's offenses threatened public and national security. The government presented an affidavit from an ATF agent, Jose Ballesteros, which stated that four rifles traced to Valencia-Toro's purchases were found in the possession of parties who have connections to the Medellin drug cartel in Colombia.
 
 
 7
 Using U.S.S.G. § 2K2.1 (effective November 1, 1991) ("the 1991 section 2K2.1") as guidance, the district court granted the departure. The court sentenced Valencia-Toro to 33 months imprisonment, followed by three years supervised release. Absent the upward departure, the applicable guideline range would have been eight to fourteen months.
 
 II. STANDARD OF REVIEW
 
 8
 We employ a three-part standard of review when reviewing the sentencing court's decision to depart upward from the guidelines. United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991) (en banc). We review de novo whether the sentencing court correctly identified factors not adequately considered by the Sentencing Commission (the "Commission") in the applicable guideline. Id. We review for clear error the factual findings supporting the existence of the aggravating circumstances. Id. We review the extent of the departure for an abuse of discretion. Id.
 
 III. DISCUSSION
 
 9
 Under 18 U.S.C. § 3553(b), "the district court may not depart from the applicable Guideline range unless it identifies an aggravating circumstance of a kind or to a degree the Commission did not adequately take into account when formulating the Guidelines." Lira-Barraza, 941 F.2d at 746. Valencia-Toro contends that the district court erred when it decided to depart upward from the base offense level because it relied on factors already adequately considered by the Commission. We agree.
 
 
 10
 The district court departed upward from the base offense level because Valencia-Toro illegally transferred the rifles knowing or reasonably believing that they would be used illegally.[1] The district court used the 1991 section 2K2.1 as guidance for its seven-level departure. April 27, 1992 transcript at 4.
 
 
 11
 Section 2K2.1 and its Commentary originally contained no language regarding the transfer of firearms with the reasonable belief that they would be used for an illegal purpose. See U.S.S.G. § 2K2.1 (effective November 1, 1987). Section 2K2.1(b)(5) now states as follows:
 
 
 12
 [i]f the defendant ... possessed or transferred any firearm ... with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting level is less than level 18, increase to level 18.
 
 
 13
 U.S.S.G. § 2K2.1(b)(5) (effective November 1, 1991).
 
 
 14
 The district court determined that the amendment of section 2K2.1 indicated that the Commission believed that the 1987 section 2K2.1 did not take the factor of intended illegal use into account.[2]
 
 
 15
 We first address the aggravating circumstance that Valencia-Toro transferred the rifles with reason to believe that they would be used for an illegal purpose. We disagree with the district court's interpretation of section 2K2.1. When the Commission amended section 2K2.1 in 1991, it was not adding a factor that it had not previously considered. The amendment was an alteration, i.e., the Commission changed its mind about the weight such a factor should be given.
 
 
 16
 In United States v. Enriquez-Munoz, 906 F.2d 1356 (9th Cir.1990) we considered whether, under the 1987 section 2K2.1, an upward departure was warranted because of a defendant's intended illegal use. We concluded "that the fact that the weapons are purchased for use in illegal ventures is not a valid reason for an upward departure in the case of an offense subject exclusively to § 2K2.1." Id. at 1361. Our reasoning was based on the fact that the 1987 section 2K2.1 instructed the sentencing court to decrease the base offense level if the firearms were possessed solely for a lawful purpose, e.g., sport or collection. Because the Commission allowed for a decrease for lawful use, we concluded that the base offense level accounted for illegal use. "In fact, if intended legal use required a decrease and intended illegal use required an increase there would be little or no purpose or effect left for the basic guideline level." Id.
 
 
 17
 The fact that the Commission amended section 2K2.1 in 1991 does not convince us that our analysis in Enriquez-Munoz was incorrect. The 1991 amendment collapsed what were three sections, 2K2.1, 2K2.2, and 2K2.3, into one guideline section. This indicates that the Commission re considered factors that it considered when originally drafting these related sections, and altered the weight to be given such factors.
 
 
 18
 For example, the 1987 section 2K2.1 did not provide for an increase in the base offense level because of the number of firearms. But in sections 2K2.2 and 2K2.3, the number of firearms was of great importance. We noted in Enriquez-Munoz that the Commission had decided to treat offenses covered by section 2K2.1 differently. Id. at n. 9. In the 1991 version of section 2K2.1 the number of firearms helps determine the base offense level for all offenses previously covered by 2K2.1, 2K2.2, and 2K2.3. The Commission appears to have decided that all these offenses should now be treated similarly.
 
 
 19
 Following our analysis in Enriquez-Munoz, we conclude that the Commission adequately considered intended illegal use of firearms in the 1987 version of section 2K2.1 and chose not to increase the base offense level for that factor. Therefore, Valencia-Toro's transfer of the rifles to Ramirez with the knowledge that the rifles would be put to an illegal use did not warrant an upward departure.[3]
 
 
 20
 The government alternatively argues that an upward departure is warranted because Valencia-Toro's conduct threatened the public safety. The district court, however, did not base the upward departure on the threat to public safety. The court made the following statement at the April 27, 1992 hearing, "I do not have to make any findings as to whether or not national security is involved, and I do not." April 27, 1992 transcript at 13. The district court chose not to depart on this ground, we are not called upon to rule on this issue. See United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992).
 
 IV. CONCLUSION
 
 21
 Because the district court identified improper grounds on which to depart upward, the sentence is VACATED and the case is REMANDED for further proceedings consistent with the views expressed above.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court made the following statements:
 I'm abundantly satisfied that this defendant either knew or should have known that the firearms were destined for illegal use by narco traffickers and terrorists in Colombia.
 April 27, 1992 transcript at 6;
 I'm satisfied far beyond a preponderance of the evidence, but I'm certainly satisfied by a preponderance of the evidence that the defendant did and reasonably should have known that the transfer of the weapons was not only to this unidentified person, except by name, was illegal, but that the weapons would be put to the improper use to which they were put.
 April 27, 1992 transcript at 8;
 Well, the transfer to the other persons is itself another crime and is sufficient to justify the upward departure. But, in addition to that, you have to factor that the weapons were transferred, not just to this other individual for him to use in a crime, but for him to pass on to others who use them in a more organized fashion.
 April 27, 1992 transcript at 13-14.
 
 
 [2]
 The district court made the following statements regarding the amendment to section 2K2.1:
 All that means is, as of 1987 the sentencing commission hadn't thought of it when they did think of it later and amended the guidelines. It showed the appropriateness of this factor which means that instead of applying the adjustment in 1991 to the guidelines which I can't do because that is ex post facto punishment, it does provide a legitimate reason to depart to the level later found by the sentencing commission to be appropriate.
 ....
 In other words, they remedied in 1991 an omission that they made in 1987.
 January 27, 1992 transcript at 20.
 
 
 [3]
 We note that the district court clearly stated that it did not consider the nature and number of the rifles to be an aggravating circumstance. Rather, it drew inferences from the nature and number of the rifles to establish that Valencia-Toro had reason to believe they would be used for illegal purposes. April 27, 1992 transcript at 9-12. Even if intended illegal use warranted an upward departure, it would not be proper to use two factors that were already taken into account by the Commission, see Enriquez-Munoz 906 F.2d at 1360-61, to establish an additional aggravating circumstance not considered by the Commission