82 F.3d 424
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Paul SALEMO, Defendant-Appellant.
 No. 95-10028.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 13, 1996.
Decided April 10, 1996.
 
 Before: ALARCON, KLEINFELD and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Because the parties are familiar with the facts of this case, they will not be repeated here. In his pro se brief, Salemo raises a number of issues and subissues. We discuss each under separate heading. We affirm the judgment of conviction and sentence imposed by the district court.
 
 
 3
 * The FDIC Insurance Evidence Was Sufficient
 
 
 4
 Salemo contends that the Government did not adequately prove that Citibank, Guardian Bank and Chase Bank were insured by the Federal Deposit Insurance Corporation ("FDIC"). To support Salemo's conviction for making false statements to a financial institution in violation of 18 U.S.C. § 1014, the Government must prove that the banks were insured by the FDIC when Salemo made the false statements. United States v. Bellucci, 995 F.2d 157, 160-61 (9th Cir.1993), cert. denied, 114 S.Ct. 2719 (1994). We must affirm Salemo's conviction if "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [that the banks were insured by the FDIC on the dates the crimes were committed] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 5
 Salemo argues that the evidence offered by the Government was insufficient to establish that the banks were insured by the FDIC because "no ranking officers testified." We disagree. "We have previously rejected the argument that a bank official's testimony is necessary to prove the federally insured status of a bank." United States v. Chapel, 41 F.3d 1338, 1340 (9th Cir.1994) (citing Bellucci, 995 F.2d at 160-61), cert. denied, 115 S.Ct. 2017 (1995). Instead, we have held that any "bank employees' uncontradicted testimony of a bank's insured status can sufficiently support the jury's conclusion that this element was proven beyond a reasonable doubt." United States v. Corbin, 972 F.2d 271, 272 (9th Cir.1992).
 
 
 6
 Here, employees from each of the three banks testified that their respective banks were insured by the FDIC when Salemo made false statements to secure loans from them. A jury could reasonably conclude from this uncontested testimony that the banks were insured by the FDIC when Salemo made the false statements.
 
 II
 The Recusal Motion Was Properly Denied
 
 7
 Salemo contends that the district court erred by denying his motion for recusal brought pursuant to 28 U.S.C. § 455. Under section 455, a judge has an affirmative duty to recuse himself "in any proceeding in which his impartiality might reasonably be questioned." Liteky v. United States, 114 S.Ct. 1147, 1150 (1994) (citation omitted). A denial of a section 455 motion for recusal is reviewed for abuse of discretion. United States v. Chischilly, 30 F.3d 1144, 1149-1150 (9th Cir.1994), cert. denied, 115 S.Ct. 946 (1995). Pursuant to section 455, a district court judge must review all the circumstances affecting his or her impartiality. United States v. Sibla, 624 F.2d 864, 868-69 (9th Cir.1980).
 
 
 8
 Judicial bias or prejudice formed during current or prior proceedings is sufficient for recusal only when the judge's actions "display a deep-seated favoritism or antagonism that would make fair judgment impossible" and only "in the rarest circumstances." Liteky, 114 S.Ct. at 1157; Chischilly, 30 F.3d at 1149. In the present case, Salemo moved for recusal based on statements the judge made when explaining the dismissal of the contempt proceedings against Salemo. On appeal, Salemo also contends that statements made by Judge Rosenblatt when denying the recusal motion and during sentencing demonstrate improper bias. These contentions are without merit.
 
 
 9
 Each of the judge's comments was based on information he obtained during court proceedings. The comments were made out of the presence of the jury and consisted of rulings, admonishments, and explanations given during the sentencing proceedings. The comments do not reflect a "deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky, 114 S.Ct. at 1158. The trial judge court did not abuse his discretion in refusing to recuse himself.
 
 III
 
 10
 The Evidence Does Not Demonstrate Juror Misconduct
 
 
 11
 Salemo appeals the denial of his motion to switch a juror with an alternate on the basis that the juror lied about his occupation during voir dire. A district court's decision regarding whether to replace a juror with an alternate is reviewed for an abuse of discretion. United States v. Alexander, 48 F.3d 1477, 1485 (9th Cir.) cert. denied, 116 S.Ct. 210 (1995).
 
 
 12
 A criminal defendant has a constitutional right to an impartial jury. U.S. Const. amend. VI. To prove that the court erred in denying a challenge for cause, the defendant must demonstrate that the juror dishonestly answered a material question during voir dire and that an honest answer "would have provided a valid basis for a challenge for cause." United States v. Edmond, 43 F.3d 472, 473 (9th Cir.1994), (citing McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984)). An answer that is merely forgetful or incomplete is not dishonest. Edmond, 43 F.3d at 474.
 
 
 13
 In this case, a juror stated that he was a retired nuclear engineer. After the trial began, the juror informed the court that he had a realtor's license and that he helped his daughter with her real estate business. Salemo has not demonstrated that the juror's failure to disclose his involvement in his daughter's real estate business was dishonest. To the contrary, it is undisputed that the juror's response that he was a retired nuclear engineer was truthful. The juror's failure to disclose the type of work he has performed since his retirement does not demonstrate intentional concealment of his post-retirement "occupation." See Hard v. Burlington N.R.R. Co., 870 F.2d 1454, 1460 (9th Cir.1989) (juror has no duty to respond to a question not posed). Moreover, the juror's experience as a realtor did not provide a basis for a dismissal for cause. See United States v. Plache, 913 F.2d 1375, 1377-1378 (9th Cir.1990) (it is not an abuse of discretion in a mail fraud case to refuse to exclude a juror for cause on the ground that the juror was employed as a postal carrier).
 
 IV
 
 14
 The Indictment Was Not Multiplicious, Vindictive, Or Based
 
 On Insufficient Evidence
 
 15
 Salemo contends the indictment violated his constitutional rights because it was multiplicious, vindictive, and supported by insufficient evidence. Whether an indictment is multiplicious is a question of law which we review de novo. United States v. Castaneda, 9 F.3d 761, 764-65 (9th Cir.1993), cert. denied, 114 S.Ct. 1564 (1994). We review the sufficiency of the indictment de novo. United States v. Duran, 41 F.3d 540, 544 (9th Cir.1994). An appellant's claim of vindictive prosecution is a mixed question of law and fact which we review de novo. Duran, 41 F.3d at 543-44.
 
 
 16
 Because Salemo was charged in each count with submitting separate documents, the counts were not multiplicious. We have held that 18 U.S.C. § 1014 allows multiple convictions for false statements made in separate documents submitted to obtain a single loan. United States v. Kennedy, 726 F.2d 546, 547-48 (9th Cir.), cert. denied, 469 U.S. 965 (1984). The court concluded that "[i]t is the false statement, not the anticipated loan, which defines [a violation under § 1014]." Id. at 548. The statutes under which Salemo was charged contained different elements. Accordingly, the counts are not multiplicious. See United States v. Roberts, 783 F.2d 767, 769 (9th Cir.1985) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)) ("[a]n indictment is not multiplicious if each count requires proof of a fact which the other does not.")
 
 
 17
 The indictment charges the commission of wire fraud in plain words. The facts alleged in the accusatory pleading informed Salemo of the specific offense with which he was charged. Therefore, Salemo's contention that the indictment was insufficient is without merit. See Hamling v. United States, 418 U.S. 87, 117 (1974) (an indictment conforms to constitutional standards "if it, first contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.")
 
 
 18
 Salemo has not presented any evidence of actual vindictiveness. Thus, his claim that the indictment was vindictive must be rejected. See United States v. Goodwin, 457 U.S. 368, 382-83 (1982) ("the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified.")
 
 V
 
 19
 The Record Does Not Reflect Prosecutorial Misconduct
 
 
 20
 Salemo contends that the district court erred in denying his motion for new trial because: (1) several of the prosecutor's statements during opening and closing arguments constituted misconduct; and (2) the Government introduced false testimony regarding Salemo's use of the Princess Resort and the Resort Suites Hotels. Salemo did not object to the statements which he now contends constitute misconduct.
 
 
 21
 To prevail on a motion for new trial based on prosecution misconduct, a defendant must show prosecution misconduct which more probably than not materially affected the fairness of the trial. United States v. Smith, 893 F.2d 1573, 1583 (9th Cir.1990). When the defense does not object to the prosecutor's conduct, we must review for plain error. United States v. Young, 470 U.S. 1, 14-16 (1985).
 
 A. The Prosecutor Did Not Commit Misconduct
 
 22
 To constitute misconduct requiring a new trial, the prosecutor's statements must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation omitted). It is not misconduct for the prosecutor to argue reasonable inferences based on the record. United States v. Necoechea, 986 F.2d 1273, 1279 (9th Cir.1993). It is also not improper for a prosecutor to state that defense witnesses lied. Duckett v. Godinez, 67 F.3d 734, 742-43 (9th Cir.1995). We have reviewed the record. It demonstrates that the prosecutor's argument was based on reasonable inferences drawn from the record. No misconduct occurred during argument.
 
 
 23
 B. False Testimony Was Not Introduced At Trial
 
 
 24
 Salemo contends that the prosecutor introduced false testimony that Salemo "thr[ew] parties (plural); invite[d] bankers and whatnot." Salemo appears to argue that the Government misrepresented to the jury that meetings took place at the Princess Resort instead of the adjacent Resort Suites. A conviction must be overturned if a prosecutor knowingly offered false testimony at trial, and such testimony had any reasonable likelihood of affecting the outcome of the trial. Necoechea, 986 F.2d at 1281. At trial witnesses testified to meeting Salemo at both the Princess Resort and the Resort Suites. Salemo's Citibank Visa Card reflected charges at both the Princess Resort and the Resort Suites. Salemo has failed to demonstrate that the Government knowingly introduced false testimony.
 
 VI
 The Jury Instructions Were Proper
 A. The Duress Instruction
 
 25
 Salemo contends that he requested "affirmative defense instruction No. 1, Ninth Circuit Model Inst." and that the court improperly refused his instruction on duress. Salemo did not object to the court's duress instruction. We review an alleged instructional error for plain error where the appellant did not object. United States v. Campbell, 42 F.3d 1199, 1204-05 (9th Cir.1994), cert. denied, 115 S.Ct. 1814 (1995). Prior to trial, Salemo's counsel submitted his request for Ninth Circuit Model Instruction 6.04.01 regarding duress. At the close of evidence, the court held a conference and indicated it was inclined to give Instruction 6.04.01. Counsel did not object and the court gave this instruction. Because the trial judge gave the instruction Salemo's counsel requested, any alleged error in the text of the instruction was invited. See United States v. Gilley, 836 F.2d 1206, 1211 n. 6 (9th Cir.1988) (where instruction was proposed by the defendant "the invited error doctrine bars our review of [the] challenged instruction on appeal.")
 
 B. The Wire Fraud Instruction
 
 26
 At trial, Salemo's counsel submitted Ninth Circuit Model Instruction 3.15 concerning "intent to defraud." Shortly before closing argument, Salemo's counsel objected to giving the instruction he had proposed. When informed that the instruction was his own, Salemo's counsel withdrew the instruction and requested that the court admonish the jury that "the intent to defraud is the intent to deprive of money or property." Salemo's counsel did not submit a new instruction. The Government's instruction specifically included the language Salemo's counsel requested. The court indicated that it would give the Government's instruction. Salemo's counsel did not object. The failure to object precludes our consideration of this contention. See Fed.R.Crim.P. 30 ("[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.")
 
 VII
 
 27
 No Error Occurred In The Admission Of Salemo's Statements
 
 
 28
 Salemo contends the district court erred in admitting inculpatory statements made to FBI agents while he was in custody because they were made in the course of plea negotiations. Following a hearing on the voluntariness of Salemo's statements, the district court found that no plea negotiations had occurred, and ruled that they were admissible. "The district court's determination of whether the parties were engaged in plea discussions is a factual finding reviewed for clear error." United States v. Sitton, 968 F.2d 947, 956 (9th Cir.), cert. denied sub nom. Romero v. United States, 506 U.S. 979 (1992).
 
 
 29
 Rule 11(e)(6)(D) provides that a defendant's statements are inadmissible if "made in the course of plea discussions with an attorney for the government...." Fed.R.Crim.P. 11(e)(6)(D). See United States v. Keith, 764 F.2d 263, 265 (5th Cir.1985) ("[d]iscussions with a law enforcement agency in the spirit of cooperation and with hope for leniency, are not inadmissible under 11(e)(6)(D).") No attorney for the Government was present at the time Salemo was questioned. Accordingly, Rule 11(e)(6)(D) does not apply. The district court did not clearly err in finding that plea negotiations did not occur on January 12, 1989, and February 3, 1989.
 
 VIII
 The Evidence Was Sufficient
 
 30
 Salemo contends that the evidence presented by the Government was insufficient to support a conviction. The court must determine whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied sub nom. Brandon v. United States, 502 U.S. 1062 (1992).
 
 A. Wire Fraud
 
 31
 Salemo asserts that the Government failed to present sufficient evidence that he caused another person to transmit facsimiles. "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." Pereira v. United States, 347 U.S. 1, 8-9 (1954). There was sufficient evidence in the record to support a jury finding that Salemo at least reasonably foresaw that documents would be transmitted in furtherance of his fraudulent scheme. Pereira, 347 U.S. at 8-9.
 
 
 32
 Salemo maintains that the evidence was insufficient to prove that facsimiles were received or relied upon. The law does not require such proof. See United States v. Goldberg, 455 F.2d 479, 481 (9th Cir.) (per curiam) (a conviction of mail fraud does not require the Government "to show that reliance of the victim was induced by misrepresentation of the defendant, nor is it necessary to show that the victim was misled"), cert. denied, 406 U.S. 967 (1972).
 
 
 33
 Salemo argues that the wire fraud count for the purchase of the Mercedes was erroneous because Salemo sent a facsimile after he had purchased the car, not before. There is sufficient evidence to support the Government's contention that this was a "lulling" fax, intended to prevent the victims from discovering the fraud. See United States v. Miller, 676 F.2d 359, 362 (9th Cir.) ("[a] fraudulent scheme may depend on a mailing even after the defrauders have received their money"), cert. denied, 459 U.S. 856 (1982).
 
 
 34
 Salemo further challenges the wire fraud counts alleging that they must meet the "McNally standard." Salemo appears to refer to McNally v. United States, 483 U.S. 350 (1987), wherein the Supreme Court indicated that the mail fraud statute, prior to its recent amendment, did not cover intangible rights theories of prosecutions. Id. at 360. The wire fraud counts, however, allege a scheme "for obtaining money and property from various financial institutions and lenders, ..." Because the wire fraud counts alleged a scheme for obtaining money and property and did not include intangible rights, McNally is satisfied.
 
 B. Fraudulent Use of Social Security Number
 
 35
 Salemo contends that insufficient evidence supports his conviction for violation of 42 U.S.C. § 408(g)(2) (redesignated as 42 U.S.C. § 408(a)(7)(B) by Pub.L. 101-508 § 5121(b)(3), 104 Stat. 1388-283 (1990)). Salemo asserts that the Government failed to prove he had the requisite "intent to deceive" Citibank because Citibank ultimately obtained Salemo's correct social security number.
 
 
 36
 Under cross-examination, Salemo admitted that he knowingly gave Citibank a false social security number. A witness testified that Salemo included this false social security number on a credit application submitted to Citibank. A rational juror could have found that Salemo knowingly misrepresented his social security number with the intent of inducing Citibank to extend credit.
 
 C. False Statements
 
 37
 Salemo argues that the Government did not prove that his acts satisfied the requirements of 18 U.S.C. § 1014 and 42 U.S.C. § 408(g)(2) because: (1) Chase bank did not rely on Salemo's falsified materials in giving him the loan; (2) Salemo did not have the requisite intent for Chase to rely upon these materials since he later ordered their return; and (3) Chase did not have Salemo's false social security number. These contentions lack merit. Reliance is not an element of either section 408(g)(2) or 1014. See 42 U.S.C. § 408(g)(2) (redesignated as 42 U.S.C. § 408(a)(7)(B) by Pub.L. 101-508 § 5121(b)(3), 104 Stat. 1388-283 (1990)); 18 U.S.C. § 1014; United States v. Kennedy, 564 F.2d 1329, 1340-41 (9th Cir.1977), cert. denied sub. nom. Myers v. United States, 435 U.S. 944 (1978); United States v. Holland, 880 F.2d 1091, 1095 (9th Cir.1989). Because Salemo requested that the information be sent to the bank while it was reviewing his application for a loan, the record demonstrates that Salemo intended that Chase rely on the information.
 
 D. Impossibility (Duress)
 
 38
 Salemo argues that the crimes were "legal impossibilities" because he lacked the intent to defraud the victims. According to Salemo, he created his fraudulent scheme solely because he was under duress. Viewed in the light most favorable to the Government, the evidence before this court supports the jury's implied findings that Salemo possessed the requisite intent to defraud and did not act under duress.
 
 IX
 Admissibility Of The Government Letters
 
 39
 Salemo contends that the district court erred in excluding correspondence between the AUSA for the Eastern District of Pennsylvania and Arizona's Attorney General's office. Salemo argues that the letters were admissible under Federal Rule of Evidence 803(6). The court's construction of the Federal Rules of Evidence is a question of law reviewable de novo. United States v. Warren, 25 F.3d 890, 895 (9th Cir.1994). "We review a district court's decisions to admit evidence under exceptions to the hearsay rule for an abuse of discretion." United States v. Gilbert, 57 F.3d 709, 711 (9th Cir.1995) (internal quotation omitted).
 
 
 40
 Salemo's contention that two letters dated December 7, 1982, and May 11, 1984, were admissible under the business records exception has no merit. The statements included in the AUSA's letters were based upon information provided by Salemo, not upon the first hand knowledge of the author of letter. The business records exception applies only if the individual furnishing the recorded information is "acting routinely, under a duty of accuracy." Clark v. City of Los Angeles, 650 F.2d 1033, 1037 (9th Cir.1981) (quotation omitted), cert. denied, 456 U.S. 927 (1982); see also United States v. Sims, 617 F.2d 1371, 1377 (9th Cir.1980) (police report entries which result from the officer's own observations and knowledge are admissible, but statements made by third persons under no business duty to report are not). Business records, as defined by Rule 803(6), are those produced by the business, not merely received by the business. See Fed.R.Evid. 803(6) (the business records exception applies to documents "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the [document]....") Because the letters did not constitute records made by the Arizona Attorney General's office in the ordinary course of its duties, Rule 803(6) is not implicated.
 
 X
 
 41
 The Calculation Of Criminal History Points Pursuant To
 
 Sections 4A1.1(d) And 4A1.1(e)
 
 42
 Salemo contends that the district court improperly added two criminal history points pursuant to section 4A1.1(d), after concluding he was in custody when he committed the instant offenses. He also asserts that the district court improperly added one criminal history point pursuant to section 4A1.1(e), after concluding Salemo committed the offenses within two years of his 1985 State of Arizona conviction. The court's interpretation and application of the sentencing guidelines are reviewed de novo. United States v. France, 57 F.3d 865, 866 (9th Cir.1995). The court's factual findings for sentencing purposes are reviewed for clear error. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994).
 
 
 43
 Section 4A1.1(d) requires the court to "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Salemo was still serving his state sentence in the Northern Arizona Correction Release Center (a halfway house) when he committed the instant offense. Salemo's counsel conceded that Salemo was "not released" at the time of the commission of the instant offense. Accordingly, section 4A1.1(d) applies.
 
 
 44
 Section 4A1.1(e) requires the court to "[a]dd 2 points if the defendant committed the instant offense less than two years after release from imprisonment.... If 2 points are added for item (d), add only 1 point for this item." The district court, having assigned two points under section 4A1.1(d), correctly assigned one point under section 4A1.1(e) because the instant offense occurred within two years of Salemo's incarceration.
 
 XI
 
 45
 The Treatment Of Prior Convictions As Separate
 
 
 46
 Salemo contends that the Florida federal conviction of wire fraud and the Arizona state offense of fraudulent schemes were related and should be consolidated for sentencing purposes. Salemo asserts the two prior offenses were related because they arose out of a common scheme, and therefore a total of only three criminal history points, instead of the six assigned, should have been calculated. U.S.S.G. § 4A1.2(a)(2). Whether the two cases are related for purposes of U.S.S.G. § 4A1.2 is a mixed question of law and fact subject to de novo review. United States v. Manarite, 44 F.3d 1407, 1419 (9th Cir.), cert. denied, 115 S.Ct. 2610 (1995).
 
 
 47
 Prior convictions are related if they have: "(1) occurred on the same occasion, (2) [been] part of a single common scheme or plan, or (3) [been] consolidated for trial or sentencing." U.S.S.G. § 4A1.2, Application Note 3. We have previously noted that the following factors must be considered in determining whether crimes are related:
 
 
 48
 (1) whether the crimes were committed 'within a short period of time;' (2) whether the crimes involved the same victim; (3) whether the defendant was arrested by the same law enforcement agency for both crimes; ... (4) when the arrests occurred and whether both crimes were solved during the course of one investigation.... [and (5) ] the similarities in the offenses.
 
 
 49
 Manarite, 44 F.3d at 1419 (9th Cir.) (citations omitted).
 
 
 50
 Salemo's prior convictions are not related. The fact that they reflect a repetition of criminal conduct is not sufficient to demonstrate that the crimes are related. See United States v. Chartier, 970 F.2d 1009, 1015-16 (2d Cir.1992) (a "single common scheme or plan" was intended "to mean something more than simply a repeated pattern of criminal conduct.") The Florida offense involved the defrauding of Florida Airlines. The Arizona offense involved the defrauding of banks and property owners. The use of Florida Airlines checks in some of the Arizona transactions provides the only link. The district court did not clearly err by treating the Florida and Arizona offenses as separate under section 4A1.2(a)(2).
 
 XII
 
 51
 The Upward Departure For Obstruction of Justice
 
 
 52
 Salemo contends the district court erred in its upward departure pursuant to sentencing guideline section 3C1.1 for obstruction of justice. The district court's determination that Salemo obstructed justice is a factual finding reviewed for clear error. United States v. Barbosa, 906 F.2d 1366, 1369 (9th Cir.), cert. denied, 498 U.S. 961 (1990).
 
 
 53
 Section 3C1.1 requires the district court to increase the offense level by two levels, "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense...." U.S.S.G. § 3C1.1. "This language is mandatory, not discretionary." United States v. Ancheta, 38 F.3d 1114, 1118 (9th Cir.1994). "[A] court reviewing the imposition of a sentence under the Guidelines should give 'due regard to the opportunity of the district court to judge the credibility of the witnesses' and 'due deference to the district court's application of the Guidelines to the facts.' " Barbosa, 906 F.2d at 1370 (citations omitted). The record supports the judge's determination that Salemo had perjured himself. The district court's finding that Salemo perjured himself was sufficient to require the court to add two criminal history points for an obstruction of justice.
 
 XIII
 
 54
 The Upward Departure Pursuant To Section 4A1.3
 
 
 55
 Salemo contends the district court improperly increased his base offense level from six to nine. A district court's departure from the guidelines is reviewed under a three-part test: (1) whether the district court had "legal authority" to depart; (2) whether the district court's factual findings supported the circumstances identified as the basis for departure; and (3) whether the extent of the departure is reasonable. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). The determination of the first prong is reviewed de novo, and the factual findings supporting the second prong are reviewed for clear error. United States v. Ono, 997 F.2d 647, 649 (9th Cir.1993), cert. denied, 114 S.Ct. 738 (1994).
 
 
 56
 The court has legal authority to depart "from the applicable Guideline range [if] it identifies an aggravating circumstance of a kind or to a degree the Commission did not adequately take into account when formulating the Guidelines." Lira-Barraza, 941 F.2d at 746. To support his upward departure, the sentencing judge relied on Salemo's prior convictions for similar fraudulent criminal activity for which no criminal history points had been assigned and Salemo's criminal conduct committed in Pennsylvania while on release from Arizona for which no prosecution occurred. This history constitutes a type of aggravating circumstance not adequately considered by the Commission in formulating the guidelines and provides a reasonable basis for an upward departure. Id. at 751.
 
 XIV
 
 57
 Salemo's Sixth Amendment Right To A Fair Trial And His
 
 Fourteenth Amendment Right To Due Process
 
 58
 Salemo contends that the "[r]easons stated by Court for sentence [are] incorrect as to record, documents, relevant facts." As demonstrated in the above analysis of the application of the sentencing guidelines, the court's sentence was amply supported by the record and the guidelines. Salemo also asserts that the "[c]ourt punished [him] for exercise of Constitutional rights, filing legal complaints against prosecutor, F.B.I., and Judge (Motion to Change)." Salemo does not support this assertion with argument. Therefore, we decline to address this contention. See Officers For Justice v. Civil Serv. Com'n, 979 F.2d 721, 726 (9th Cir.1992) ("we will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief") (citation omitted), cert. denied sub nom. San Francisco Police Officers Ass'n v. City and County of San Francisco, 507 U.S. 1004 (1993).
 
 
 59
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3